ACCEPTED
12-17-00297-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
11/27/2017 4:04 PM
Pam Estes
CLERK

**CAUSE NO. 12-17-00297-CV**   **ORAL ARGUMENT REQUESTED**

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
11/27/2017 4:04:42 PM
PAM ESTES
Clerk

**IN THE
COURT OF APPEALS FOR THE
TWELFTH DISTRICT OF TEXAS SITTING IN TYLER, TEXAS**

**OCEANS BEHAVIORAL HEALTHCARE OF LONGVIEW,
AUDUBON BEHAVIORAL HOSPITAL OF LONGVIEW, LLC
D/B/A OCEANS BEHAVIORAL HOSPITAL OF LONGVIEW
OCEANS ACQUISITION, INC., AND JAVEN V. CAVAZOS, M.D.,**
*APPELLANTS,*

**VS.**

**NANCY M. BUTLER, INDIVIDUALLY AND AS EXECUTOR OF
THE ESTATE OF HUEY D. BUTLER, DECEASED, AND ON BEHALF
OF THE WRONGFUL DEATH BENEFICIARIES OF HUEY D. BUTLER,**
*APPELLEE.*

**On Appeal from the County Court at Law No. 2
of Gregg County, Texas**

**APPELLANTS' BRIEF FILED BY OCEANS BEHAVIORAL
HEALTHCARE OF LONGVIEW, AUDUBON BEHAVIORAL
HEALTHCARE OF LONGVIEW, LLC d//b/a OCEANS BEHAVIORAL
HOSPITAL OF LONGVIEW and OCEANS ACQUISITION, INC.**

KENT, ANDERSON, BUSH, FROST & METCALF,
P.C.
**David W. Frost
State Bar No. 24002111
Vance L. Metcalf
State Bar No. 24037102**

**2320 Dueling Oaks Drive**
**Tyler, Texas 75703**
**(903) 579-7507**
**(903) 581-3701 (fax)**

*Attorneys for Appellants Oceans Behavioral Healthcare of Longview, Audubon Behavioral Healthcare of Longview, LLC d/b/a Oceans Behavioral Hospital of Longview and Oceans Acquisition, Inc.*

# IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties to the trial court's judgment or order appealed from and the names and addresses of all trial and appellate counsel:

## PLAINTIFFS / APPELLEE:

**Nancy M. Butler, Individually and as Executor of the Estate of Huey D. Butler, Deceased, and on behalf of the Wrongful Death Beneficiaries of Huey D. Butler,**

Trial Counsel and Appellate Counsel:

R. Daniel Sorey
The Sorey Law Firm, PLLC
109 W. Tyler Street
Longview, Texas 75601
(903) 212-2822
(903) 212-2864 - FAX
dan@soreylaw.com

Appellate Counsel:

M. Keith Dollahite
M. KEITH DOLLAHITE, P.C.
5457 Donnybrook Avenue
Tyler, Texas 75703
(903) 581-2110
(903) 581-2113 (Facsimile)
Keith@mkdlaw.us


## DEFENDANTS / APPELLANTS:

**Oceans Behavioral Healthcare of Longview, Audubon Behavioral Healthcare of Longview, LLC d/b/a Oceans Behavioral Hospital of Longview and Oceans Acquisition, Inc.**

Trial Counsel and Appellate Counsel:

David W. Frost
Kent, Anderson, Bush, Frost & Metcalf, P.C.
1121 E.S.E. Loop 323, Suite 200
Tyler, Texas 75701
(903) 579-7500
(903) 581-3701 Facsimile
dfrost@tyler.net


Vance L. Metcalf
Kent, Anderson, Bush, Frost & Metcalf, P.C.
1121 E.S.E. Loop 323, Suite 200
Tyler, Texas 75701
(903) 579-7500
(903) 581-3701 Facsimile
Vmetcalf@tyler.net

**DEFENDANT / APPELLANT:**

**Javen V. Cavazos, M.D.**

Trial Counsel:

C. Victor Haley
1801 North Street
P.O. Drawer 631668
Nacogdoches, Texas 75963-1668
(936) 569-2327
(936) 569-7932 - FAX
vhaley@fairchildlawfirm.com

**TABLE OF CONTENTS**

IDENTITY OF PARTIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INDEX OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

    **(1)** Whether the trial court abused its discretion in overruling Oceans Behavioral Hospital's objections to Appellee's expert report based on Dr. Keith Miller's failure to show that he is qualified to provide expert opinions concerning the standard of care applicable to a psychiatric hospital? . . . . . . . . . . . . . . . . . . ix

    **(2)** Whether the trial court abused it's discretion in overruling Oceans Behavioral Hospital's objections to Appellee's expert report based on Dr. Miller's failure to adequately address the elements of standard of care, breach and causation?. . . . . . . . . . ix

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ISSUES PRESENTED (RESTATED). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    **(1)** Whether the trial court abused its discretion in overruling Oceans Behavioral Hospital's objections to Appellee's expert report based on Dr. Keith Miller's failure to show in his report that he is qualified to provide expert opinions concerning the standard of care applicable to a psychiatric hospital? . . . . . . . . . . 4

    **(2)** Whether the trial court abused it's discretion in overruling

**Oceans Behavioral Hospital's objections to Appellee's expert report based on Dr. Miller's failure to adequately address the elements of standard of care, breach and causation?.** . . . . . . . . . . 4

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     **Standard of Review - Abuse of Discretion.** . . . . . . . . . . . . . . . . . . 4

    II.    **Expert Report Requirements - Chapter 74 of the Civil Practice and Remedies Code** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    III.   **Dr. Miller's report fails to comply with Chapter 74 of the Civil Practice and Remedies Code..** . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.    **Dr. Miller, who is a family practitioner, is not qualified to offer expert opinions concerning the standard of care applicable to a psychiatric hospital..** . . . . . . . . . . . . . . . . . . 8

            1.    **Not every licensed doctor is automatically qualified to testify as an expert on every medical question..** . . . 8

            2.    **Dr. Miller is not a psychiatrist and does not practice the same type of health care as Oceans Behavioral Hospital and its staff..** . . . . . . . . . . . . . . . . . . . . . . . . 9

            3.    **A court may not, through inferences or otherwise, fill in the gaps in an expert report where the expert fails to detail why or how he is qualified to opine about the applicable standard of care..** . . . . . . . . . . . . . . . 11

        B.    **Dr. Miller's report contains inadequate statements regarding the standard of care, breach, and causation..** . . . . 12

            1.    **Dr. Miller's report contains inadequate statements on standard of care and breach of the standard of care..** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            2.    **Dr. Miller's report fails contains impermissibly conclusory statements on causation..** . . . . . . . . . . . . 18

    IV.    **CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**PRAYER.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

**CERTIFICATE OF SERVICE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**

**APPENDIX.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

# INDEX OF AUTHORITIES

## CASES

*American Transitional Care Ctrs. of Tex. v. Palacios*,
46 S.W.3d 873, 877 (Tex. 2001). . . . . . . . . . . . . . . . . . 4, 6, 7, 13, 14, 19

*Austin Heart, P.A. v. Webb*, 228 S.W.3d 276
(Tex. App.—Austin 2007, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bowie Mem'l Hosp. v. Wright*,
79 S.W.3d 48 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . 6, 19, 20

*Broders v. Heise*,
924 S.W.2d 148 (Tex. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Castillo v. August*, 248 S.W.3d 874
(Tex. App.–El Paso 2008, no pet). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Conboy v. Lindale Health Care,* LLC, 2013 Tex. App. LEXIS 11013
(Tex. App.–Tyler 2013, August 29, 2013, no pet.). . . . . . . . . . . . . . . . . . 18

*Costello v. Christus Santa Rosa Health Care Corp.*
141 S.W.3d 245 (Tex. App.—San Antonio 2004, no pet.). . . . . . . . . . . . . . 19

*Downer v. Aquamarine Operators, Inc.*,
701 S.W.2d 238 (Tex. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Earle v. Ratliff*,
998 S.W.2d 882 (Tex. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19

*Flores v. Fourth Court of Appeals*,
777 S.W.2d 38 (Tex. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*HN Tex. Props., L.P. v. Cox*,  2009 WL 3337190
(Tex. App.–Fort Worth Oct. 15, 2009, no pet.). . . . . . . . . . . . . . . . . . . 12

*Hunter v. Robison*, 488 S.W.2d 555

(Tex. Civ. App.–Dallas 1972, writ ref'd n.r.e.)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Jelinek v. Casas*, 328 S.W.3d 526 (Tex. 2010). . . . . . . . . . . . . . . . . . . . 19

*Jones v. Ark-La-Tex Visiting Nurses, Inc.*,
128 S.W.3d 393 (Tex. App.–Texarkana 2004, no pet.). . . . . . . . . . . . 10, 11

*Senior Care Centers, LLC v. Shelton,* 459 S.W.3d 753
(Tex. App.–Dallas 2015, no pet.). . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Shaw v. BMW Healthcare, Inc.*, 100 S.W.3d 8
(Tex. App.–Tyler 2002, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . 4

*Taylor v. Fossett*, 320 S.W.3d 570
(Tex. App.– Dallas 2010, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . 20

*Tenet Hosp. Ltd v. Love*, 347 S.W.3d 743
(Tex. App.–El Paso 2011, no pet.). . . . . . . . . . . . . . . . . . . . . . . . 11

*Van Ness v. ETMC First Physicians*, 461 S.W.3d 140
(Tex. 2015, reh'g denied) (per curiam) . . . . . . . . . . . . . . . . . . . . . . 20


**STATUTES**

TEX. CIV. PRAC. & REM. CODE § 74.351(a). . . . . . . . . . . . . . . . . . . . . . . . . 5

TEX. CIV. PRAC. & REM. CODE § 74.351(b). . . . . . . . . . . . . . . . . . . . . . . . . 7

TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). . . . . . . . . . . . . . . . . . . . . . . 6

TEX. CIV. PRAC. & REM. CODE § 74.402(a). . . . . . . . . . . . . . . . . . . . . . 9-11

TEX. CIV. PRAC. & REM. CODE § 74.402(b). . . . . . . . . . . . . . . . . . . . . . 9, 10

TEX. CIV. PRAC. & REM. CODE §74.303(e)(2). . . . . . . . . . . . . . . . . . . . . . . 14

TEX. CIV. PRAC. & REM. CODE §74.351(r)(6). . . . . . . . . . . . . . . . . . . . . . . . 18

Texas Revised Civil Statute Annotated, Article 4590i, Section 13.01. . . . . . . . . . . 12

**STATEMENT OF THE CASE**

On January 20, 2017, Appellee Nancy M. Butler filed this health care liability claim related to the care and treatment rendered to Mr. Huey D. Butler, Deceased while he was hospitalized at Audubon Behavioral Healthcare of Longview, LLC d/b/a Oceans Behavioral Hospital of Longview ("Oceans Behavioral Hospital") for 14 days in March 2015. (CR 4). Oceans Behavioral Hospital filed its Original Answer on February 17, 2017. (CR 17).

On April 19, 2017, in an attempt to meet the requirements of Section 74.351 of the Texas Civil Practice and Remedies Code, Appellee mailed to Defendants a report and CV from Dr. Keith E. Miller dated April 10, 2017. (CR 153); see also Appendix B. On May 10, 2017, Oceans Behavioral Hospital filed its Objections to Expert Report and Motion to Dismiss based on the inadequacy of Dr. Miller's report. (CR 142 and CR 191).[1] On September 21, 2017, the trial court entered an Order Denying Defendant's Motion to Dismiss. (CR 285). On October 4, 2017, Oceans filed a notice of interlocutory appeal (CR 287).

---

[1]Separate Motions to Dismiss were filed on behalf of Defendant Oceans Acquisitions, Inc. (CR 142) and Oceans Behavioral Hospital of Longview (CR 191).

# ISSUES PRESENTED

**(1)    Whether the trial court abused its discretion in overruling Oceans Behavioral Hospital's objections to Appellee's expert report based on Dr. Keith Miller's failure to show that he is qualified to provide expert opinions concerning the standard of care applicable to a psychiatric hospital?**

**(2)    Whether the trial court abused it's discretion in overruling Oceans Behavioral Hospital's objections to Appellee's expert report based on Dr. Miller's failure to adequately address the elements of standard of care, breach and causation?**

**IN THE
COURT OF APPEALS FOR THE
TWELFTH DISTRICT OF TEXAS SITTING IN TYLER, TEXAS**

**OCEANS BEHAVIORAL HEALTHCARE OF LONGVIEW,
AUDUBON BEHAVIORAL HOSPITAL OF LONGVIEW, LLC
D/B/A OCEANS BEHAVIORAL HOSPITAL OF LONGVIEW
OCEANS ACQUISITION, INC., AND JAVEN V. CAVAZOS, M.D.,**
*APPELLANTS,*

**VS.**

**NANCY M. BUTLER, INDIVIDUALLY AND AS EXECUTOR OF
THE ESTATE OF HUEY D. BUTLER, DECEASED, AND ON BEHALF
OF THE WRONGFUL DEATH BENEFICIARIES OF HUEY D. BUTLER,**
*APPELLEE.*

**On Appeal from the County Court at Law No. 2
of Gregg County, Texas**

**APPELLANTS' BRIEF FILED BY OCEANS BEHAVIORAL
HEALTHCARE OF LONGVIEW, AUDUBON BEHAVIORAL
HEALTHCARE OF LONGVIEW, LLC d/b/a OCEANS BEHAVIORAL
HOSPITAL OF LONGVIEW and OCEANS ACQUISITION, INC.**

COMES NOW, OCEANS BEHAVIORAL HEALTHCARE OF

LONGVIEW, AUDUBON BEHAVIORAL HEALTHCARE OF LONGVIEW,

**LLC d//b/a OCEANS BEHAVIORAL HOSPITAL OF LONGVIEW and OCEANS ACQUISITION, INC**,, Appellants in the above-entitled and numbered cause and files the following Appellants' Brief asking the Court of Appeals to reverse the trial court's ruling on its Motion to Dismiss and in support thereof would respectfully show the court the following:

## STATEMENT OF FACTS

This suit involves a health care liability claim related to care and treatment rendered to Huey D. Butler, Deceased by Appellants. Mr. Butler was a patient at Oceans Behavioral Hospital from March 10, 2015 until March 23, 2015. (CR 72). Mr. Butler was admitted for psychiatric treatment of major depressive disorder with psychosis and dementia with behavioral disturbances. (CR 278). At that time, Mr. Butler was 74 years old. (CR 72)..

Appellee alleges that while Mr. Butler was a patient at Oceans Behavioral Hospital, Dr. Javen Cavazos treated Mr. Butler's major depressive disorder and dementia with multiple medications, including tranquilizers and antidepressants. (CR 72). Appellee further alleges that Mr. Butler was over-sedated. (CR 73).

Appellee alleges that on March 23, 2015, Mr. Butler was transferred from Oceans Behavioral Hospital to Longview Regional Medical Center where he was noted upon admission to be suffering from "over-sedation" and "mental status changes

secondary to medication." (CR 73). Appellee alleges that Mr. Butler was also noted to have various conditions associated with dehydration. *Id.*

On April 2, 2015, Mr. Butler was discharged from the hospital and admitted to Havencare Nursing and Rehab in Longview. (CR 74). Mr. Butler was subsequently discharged from Havencare, but then readmitted to Havencare on July 10, 2015. *Id.* Mr. Butler passed away on August 3, 2015 while at Havencare, almost five (5) months after his stay at Oceans Behavioral Hospital. *Id.*

## SUMMARY OF ARGUMENT

The trial court abused its discretion in denying Oceans Behavioral Hospital's Motion to Dismiss. First, Dr. Keith Miller, who is a family practice doctor, failed to show in his report that he is qualified to provide opinions regarding the applicable standard of care for a psychiatric hospital in this matter.

Second, the trial court abused its discretion in denying Oceans Behavioral Hospital's Motion to Dismiss based on the inadequate and conclusory statements contained in Dr. Miller's report on standard of care, breach and causation. Dr. Miller fails to provide any specific information whatsoever linking any act or omission on the part of Oceans Behavioral Hospital in March 2015 to Mr. Butler's deteriorating health and death over five months later, in August 2015.

Since the report fails to satisfy the legal requirements of an expert report, the

trial court abused its discretion in denying Appellants' Motion to Dismiss.  This Court should reverse and render.

## ISSUES PRESENTED (RESTATED)

**(1)  Whether the trial court abused its discretion in overruling Oceans Behavioral Hospital's objections to Appellee's expert report based on Dr. Keith Miller's failure to show in his report that he is qualified to provide expert opinions concerning the standard of care applicable to a psychiatric hospital?**

**(2)  Whether the trial court abused it's discretion in overruling Oceans Behavioral Hospital's objections to Appellee's expert report based on Dr. Miller's failure to adequately address the elements of standard of care, breach and causation?**

## ARGUMENT AND AUTHORITIES

### I.    Standard of Review - Abuse of Discretion

The standard of review in this case is abuse of discretion. *American Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001); *Shaw v. BMW Healthcare, Inc.*, 100 S.W.3d 8, 12 (Tex. App.–Tyler 2002, pet. denied). Under an abuse of discretion standard, appellate courts defer to a trial court's factual determinations, but review questions of law de novo. *Shaw*, 100 S.W.3d at 12. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for the trial court's judgment. *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41 (Tex. 1989). If a trial court fails to apply the law correctly to the case, the trial court has abused its discretion requiring correction by the court of appeals.

### II.    Expert Report Requirements - Chapter 74 of the Civil Practice and Remedies Code

Section 74.351(a) of the Texas Civil Practice and Remedies Code reads as follows:

> (a) In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a

curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived.

See TEX. CIV. PRAC. & REM. CODE § 74.351(a).

Section 74.351(r)(6) defines an "expert report" as:

(6) "Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6).

Therefore, to satisfy the requirements of the statute, a plaintiff in a medical malpractice case must provide an expert report to the defendants. The report must provide a fair summary of the expert's opinions, must set out what the expert alleges the defendant did wrong and how those actions allegedly caused injury to the plaintiffs. In *Bowie Mem'l Hosp. v. Wright*, the Supreme Court of Texas stated, "If a plaintiff timely files an expert report and the defendant moves to dismiss because of the report's inadequacy, the trial court must grant the motion only if it appears to the court, after hearing, that the report does not represent a ***good faith effort*** to comply with the

definition of an expert report in Subsection (r)(6) of this section." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 51-52 (Tex. 2002)(per curiam)(emphasis added).

The Supreme Court of Texas has defined a "good-faith effort" as one that provides information sufficient to (1) inform the defendant of the specific conduct the plaintiff has called into question, and (2) provide a basis for the trial court to conclude that the claims have merit. *Id.* at 52 (citing *Palacios*, 46 S.W.3d at 879). The trial court's review is limited to the four corners of the expert report, which need not "marshal all the plaintiff's proof" but must include the expert's opinion on each of the three main elements: standard of care, breach, and causation. *Id.*

The Supreme Court of Texas has held that the "report cannot merely state the expert's conclusions about these elements," but "the expert must explain the basis of his statements to link his conclusions to the facts." *Palacios*, 46 S.W.3d at 877 (Tex.2001)(*quoting Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)). "A report that merely states the expert's conclusions about the standard of care, breach, and causation" does not fulfill the two purposes of a good-faith effort." *Palacios*, 46 S.W.3d at 879.

If a report fails to comply with the requirements of Chapter 74 of the Texas Civil Practice and Remedies Code, the trial court is required to dismiss the case because of the defendants failure to serve an adequate expert report. TEX. CIV. PRAC.

& REM. CODE § 74.351(b). The dismissal also carries mandatory sanctions, requiring an award to the defendant of his costs and attorney's fees against the plaintiff or the plaintiff's attorney. *Id*.; See *Palacios*, 46 S.W.3d 873, 877 (Tex. 2001).

## III. Dr. Miller's report fails to comply with Chapter 74 of the Civil Practice and Remedies Code.

The trial court should have granted Appellant's Motion to Dismiss for several reasons. First, Dr. Miller's report and CV fail to show that he is qualified to offer opinions concerning the standard of care applicable to a psychiatric hospital. Second, Dr. Miller's report contains inadequate on the standard of care and breach. Third, Dr. Miller's opinions on causation are merely conclusory statements which are impermissible. Therefore, the trial court abused its discretion in denying Oceans Behavioral Hospital's Motion to Dismiss.

### A. Dr. Miller, who is a family practitioner, is not qualified to offer expert opinions concerning the standard of care applicable to a psychiatric hospital.

#### 1. Not every licensed doctor is automatically qualified to testify as an expert on every medical question.

"A report authored by a person who is not qualified to testify cannot constitute an expert report." *Castillo v. August*, 248 S.W.3d 874, 879 (Tex. App.–El Paso 2008, no pet). Not every licensed doctor is automatically qualified to testify as an expert on

every medical question. *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996). In deciding whether an expert is qualified, the trial court "must ensure that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Id*. at 151. Therefore, the focus is on the very matter on which the expert is to give an opinion. *Id*.

A physician is qualified to submit an expert report on whether a health care provider departed from accepted standards of care if the physician is qualified under the requirements of Section 74.402 of the Texas Civil Practice and Remedies Code.

Section 74.402 provides in part as follows:

(b) In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:

(1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

TEX. CIV. PRAC. & REM. CODE § 74.402(b)

Additionally, 74.402(a) provides:

> (a) For purposes of this section, "practicing health care" includes:
> (1) training health care providers in the same field as the defendant health care provider at an accredited educational institution; or
>
> (2) serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider.
>
> TEX. CIV. PRAC. & REM. CODE § 74.402(a)

## 2. Dr. Miller is not a psychiatrist and does not practice the same type of health care as Oceans Behavioral Hospital and its staff.

Dr. Miller is not qualified to provide standard of care testimony as to Defendant Oceans Behavioral Hospital. Oceans is a behavioral and psychiatric hospital. Oceans is not a general hospital or a nursing home. Huey Butler was admitted to Oceans Behavioral Hospital for *psychiatric* treatment of his major depressive disorder with psychosis and dementia with behavioral disturbances. Part of his treatment, as alleged by Plaintiff, was for adjustment of his psychotropic medications. (CR 9). Dr. Miller is not qualified, and his report does not show that he is qualified, to provide standard of care opinions regarding the care and treatment at issue.

Dr. Miller does not meet any of the statutory requirements under Section 74.402(b) to be qualified to provide standard of care testimony against Oceans personnel. There is nothing in his report or curriculum vitae demonstrating or explaining that he has knowledge of, or is familiar with, the accepted standard of care

for behavioral and psychiatric hospitals. Also, there is nothing in his report or curriculum vitae demonstrating that he has knowledge of, or is familiar with, the treatment of psychiatric patients suffering from major depressive disorder with psychosis and dementia with behavioral disturbances. When Dr. Miller's report and CV are examined closely, there is no indication in Dr. Miller's report or CV showing that Dr. Miller is qualified on the basis of his training or experience to offer an expert opinion regarding the accepted standard of care for a behavioral and psychiatric hospital and its staff. See *Jones v. Ark-La-Tex Visiting Nurses, Inc.*, 128 S.W.3d 393, 396-97 (Tex. App.–Texarkana 2004, no pet.)(holding that physician was not qualified to opine about nursing standards because his report failed to state his qualifications to opine about the standard of care for nurses monitoring a patient in a home healthcare setting and because his curriculum vitae did not contain information showing he is an expert on nursing care).

Dr. Miller is a family practice physician. He simply does not have the qualifications to express standard of care opinions as to a behavioral hospital and behavioral hospital staff. As required under Section 74.402(b)(1), Dr. Miller does not practice health care that involves the same type of care or treatment as delivered by Oceans and its personnel. Section 74.402(a) indicates that someone is "practicing health care" if they are "training health care providers in the same field as the defendant

health care provider at an accredited educational institution" or " serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider." See TEX. CIV. P. REM. CODE §74.402(a). Dr. Miller does not meet any of the statutory requirements with regard to Defendant Oceans and its personnel.

**3.      A court may not, through inferences or otherwise, fill in the gaps in an expert report where the expert fails to detail why or how he is qualified to opine about the applicable standard of care.**

On Page 2 of his report, Dr. Miller summarily states that he is "familiar with the standards of care applicable to physicians, nurses, healthcare facilities, and their staffs that treat patients such as Mr. Butler." (CR 71). However, Dr. Miller fails to demonstrate that he is familiar with the treatment of psychiatric patients <u>in a behavioral or psychiatric hospital</u>, or that he has experience treating such patients <u>in a behavioral and psychiatric hospital</u>. "[I]t is not enough to summarily state such 'knowledge' when the reports and curricula vitae fail to demonstrate how the experts gained the requisite experience or training." *Tenet Hosp. Ltd v. Love*, 347 S.W.3d 743, 750 (Tex. App.–El Paso 2011, no pet.). In order to find that Dr. Miller is qualified to express opinions concerning the applicable standard of care in this case, the could would necessarily have to resort to filling in gaps through inferences.

In *Jones v. Ark-La-Tex Visiting Nurses, Inc.*, 128 S.W.3d 393 (Tex. App.—Texarkana 2004, no pet.), the plaintiff filed suit against a home health company for the alleged negligence of its nurses related to the insertion, maintenance and monitoring of an intravenous needle. See *Jones*, 128 S.W.3d at 395. The plaintiff produced an expert report from a physician pursuant to the former Texas Revised Civil Statute Annotated, Article 4590i, Section 13.01. The defendant objected to the report based on the doctor failing to show he was qualified to provide standard of care opinions applicable to nurses monitoring a patient in the home healthcare setting. *Id.* at 397-98. The trial court agreed and Court of Appeals subsequently affirmed the dismissal of the case. See also *HN Tex. Props., L.P. v. Cox*, 2009 WL 3337190, at *4 (Tex. App.–Fort Worth Oct. 15, 2009, no pet.)("though Dr. Mitchell is not automatically disqualified from giving an expert opinion regarding the accepted standard of care for HN's nurses simply because he is an internal medicine physician instead of a nurse, **we may not through inferences or otherwise fill in the gaps in his report where he fails to detail why or how he is qualified to opine about the applicable standard of care** for HN's nurses.")(emphasis added).

In the present case, the court cannot through inferences or filling of gaps in Dr. Miller's report find he is qualified to provide standard of care opinions as to a behavioral and psychiatric hospital in the care and treatment of psychiatric patients.

Dr. Miller's report and curriculum vitae fail to show he is qualified to render standard of care opinions against Oceans and its staff. Therefore, the trial court abused its discretion by denying Appellants' Motion to Dismiss.

**B.** **Dr. Miller's report contains inadequate statements regarding the standard of care, breach, and causation.**

In addition to failing to show that he is qualified to express standard of care opinions as to Oceans Behavioral Hospital and its staff, Dr. Miller has failed to adequately set forth the standard of care applicable to Oceans and its staff, how those standards of care were breached and how the breaches caused injury to Appellee.

**1.** **Dr. Miller's report contains inadequate statements on standard of care and breach of the standard of care.**

"Whether a defendant has breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently." *Palacios*, 46 S.W.3d 873, 880 (Tex. 2001). Dr. Miller's report completely fails to address what Oceans Behavioral Hospital should have done differently.

On Pages 8 - 10 of his report, Dr. Miller sets forth alleged standards of care as to Oceans and the breaches of the standards of care. See Pages 8-10 of Appendix B. Dr. Miller's statements on the standard of care do not meet the requirements for an expert report. For example, the first paragraph on Page 8, Dr. Miller writes: "the staff

of Oceans . . . should have taken any necessary measures to ensure this patient remained well hydrated at all times." *Id.* Then with regard to breach, on Page 9, Paragraph 1, Dr. Miller writes that "Oceans Behavioral Hospital failed the standard of care which required that . . . the staff of Oceans should have taken any necessary measures to ensure this patient remained well hydrated at all times." *Id.* All of Dr. Miller's other statements on the standard of care and breach are similarly worded. These statements are merely conclusions. The statements do not adequately and specifically identify the applicable standard of care and how the standard was breached. Rather, Dr. Miller is simply describing a condition suffered by a patient, not a standard of care for treating the patient to avoid the condition.

Dr. Miller writes that a standard of care requires "ensuring" that a patient remains well hydrated or "ensuring" that the patient doesn't suffer adverse side effects from medication. See Page 9 of Appendix B. These statements are an indication of the inadequacy of Dr. Miller's report. "Ensure" is defined as "to make sure, certain or safe" or "to guarantee." See MERRIAM-WEBSTER ONLINE DICTIONARY, *http://www.merriamwebster.com* */dictionary/ensure*. A standard of care that requires a health care provider "to make certain" or "guarantee" that nothing adverse ever happens to a patient is an impossible and unrealistic standard. See *Hunter v. Robison*, 488 S.W.2d 555, 560 (Tex. Civ. App.–Dallas 1972, writ ref'd n.r.e.)("a physician is

not a warrantor of cures, and his failure to cure is no evidence of negligence on his part"). The standard of care is not to "ensure" or "make certain" that a patient never develops an infection, or that a patient never develops bed sores, or that a patient never becomes dehydrated. "A finding of negligence may not be based solely on evidence of a bad result to the claimant in question." *Senior Care Centers, LLC v. Shelton,* 459 S.W.3d 753, 758-59 (Tex. App.–Dallas 2015, no pet.)(citing TEX. CIV. PRAC. & REM. CODE §74.303(e)(2)); see also *Palacios*, 46 S.W.3d at 880 (breach cannot be inferred from the existence of an injury alone because the doctrine of *res ipsa loquitor* does not generally apply in medical malpractice cases). Rather, standard of care is "what specifically an ordinarily prudent health care provider would do under the same or similar circumstances." *Shelton*, 495 S.W.3d at 758 (citing *Palacios*, 46 S.W.3d at 880).

In *Shelton*, the plaintiff filed suit against a nursing home alleging it was negligent in violating an order that the resident at issue be "NPO" (to not take food by mouth) and such alleged violation of the order caused food aspiration and subsequent death. *Id.* at 756. The defendant objected to the plaintiff's expert report based on a failure to set forth the standard of care, which were ultimately overruled by the trial court. *Id.* On appeal, the Dallas Court of Appeals reversed the trial court and dismissed the case. *Id.*

In *Shelton*, the court noted that:

> the expert failed to provide specifics as to what steps should have been taken to prevent [the resident] from being fed by the different types of people in her room: health care staff, [the resident] herself, [the resident's] visitors, her roommate, her roommate's visitors, and other residents. The reports do not state what specifically should have been done to educate those different groups of people in the room regarding [the resident's] NPO status and what, if any, more affirmative conduct to prevent others in the room from providing foot to [the resident] to eat was required.

*Id.* at 758.

In the present case, Dr. Miller's report fails to provide specific steps the standard of care be taken to address hydration of a patient who has been admitted suffering from major depressive disorder with psychosis and dementia with behavioral disturbances. Dr. Miller's report simply takes a result or condition such as dehydration and concludes that since Mr. Butler was dehydrated the standard of care was not met by Oceans and its staff. Such an opinion is insufficient and conclusory.

Similarly, Dr. Miller provides no standard of care regarding the measures that Oceans and its staff should have taken to attempt to prevent over-sedation or adverse side effects of the medications allegedly prescribed by Dr. Cavazos. He writes that they should have "ensur[ed] through appropriate means, that Mr. Butler did not suffer medication side effects including over-sedation." See Page 9 of Appendix B. However, Dr. Miller never identifies the steps Oceans and its staff should have taken

to attempt to prevent over-sedation, *i.e.*, the standard of care. After reading the report, the question remains: "What did the standard of care require Oceans and its staff to do?" By failing to address what Oceans was required to do differently, Dr. Miller does not adequately identify the standard of care.

With regard to the administration of antipsychotic medications, again, Dr. Miller does not set forth the standard of care for the treatment of a patient such as Mr. Butler who is suffering from major depressive disorder with psychosis and dementia with behavioral disturbances. Dr. Miller writes that Mr. Butler was admitted to Oceans to "better manage his symptoms." See Page 3 of Appendix B. However, Dr. Miller provides no standard of care applicable to Oceans and its staff for the management of these symptoms of major depressive disorder with psychosis and dementia with behavioral disturbances. Instead, all he writes is that they should not have given Mr. Butler antipsychotic medications. See Page 8 of Appendix B. Dr. Miller once again fails to inform Oceans and its staff of the standard of care that should have been followed to better manage Mr. Butler's symptoms.

In his report, Dr. Miller writes that Oceans physically restrained Huey Butler based on some photographs he apparently reviewed which he did not identify or authenticate, and that the standard of care required they not physically restrain Mr. Butler. See Page 15 of Appendix B. Dr. Miller is writing such statements based on

- 18 -

speculation and does not cite anywhere in the Oceans chart to support his assertion. This attempted statement of a breach of the standard of care is totally unsupported and should not be considered.

In addition, Dr. Miller's statement of the standard of care as not to use physical restraints is an impermissible conclusory opinion. He gives no basis whatsoever for the assertion that the standard of care for Oceans was to never use physical restraints, and that this was violated by the alleged, unsupported assertion, that Oceans used physical restraints on Mr. Butler. He doesn't describe the situation where these restraints were allegedly used, nor why they should not have been used in that particular situation, and what they should have done differently. He provides absolutely no information regarding this contention.

In his report, Dr. Miller has failed to properly identify the standards of care applicable to Oceans and its staff. Without properly identifying the standard of care, there cannot be a proper statement of a breach of the standard of care. Further, his attempted statements on breach of the standard of care are conclusory in that he concludes that there was a breach based only on a result, such as dehydration and over-sedation. Dr. Miller's report is deficient as to standard of care and breach. Further, as set forth in more detail below, if there is not a proper identification of the standard of care and breach of the standard of care, the report cannot possibly show

the causal relationship between a breach of the standard of care and the Plaintiff's alleged damages.

### 2. Dr. Miller's report fails contains impermissibly conclusory statements on causation.

Dr. Miller's report fails to set forth the causal relationship between a breach of the standard of care and the injury, harm or damages claimed. See TEX. CIV. PRAC. & REM. CODE §74.351(r)(6). Without properly identifying the standard of care, there cannot be a proper statement of a breach of the standard of care. Further, as set forth in more detail below, if there is not a proper identification of the standard of care and breach of the standard of care, the report cannot possibly show the causal relationship between a breach of the standard of care and the plaintiff's alleged damages. Dr. Miller failed to identify the applicable standards of care. Therefore, he has failed to show the causal relationship between a breach of the standard of care and Plaintiff's alleged damages. Further, his attempts at stating an opinion on a causal relationship between a breach and the damages alleged are impermissibly conclusory.

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent this act or omission, the harm would not have occurred. *Conboy v. Lindale Health Care,* LLC, 2013 Tex. App. LEXIS 11013, *6 (Tex. App.–Tyler 2013, August 29, 2013, no pet.)(citing *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex.

App.—San Antonio 2004, no pet.). Merely providing some insight into the plaintiff's claims does not adequately address causation. *Id.* (citing *Bowie Mem. Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002)). Accordingly, causation cannot be inferred; it must be clearly stated. *Id.* (citing *Castillo v. August*, 248 S.W.3d 874, 883 (Tex. App.—El Paso 2008, no pet.)). The court may not fill in gaps in a report by drawing inferences or guessing what the expert meant or intended. *Id.* (citing *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.).

The Supreme Court of Texas has held that the "report cannot merely state the expert's conclusions about [the elements required in an expert report]," but "'the expert must explain the basis of his statements to link his conclusions to the facts.'" *Palacios*, 46 S.W.3d at 877 (Tex.2001) (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)). "A report that merely states the expert's conclusions about the standard of care, breach, and causation" does not fulfill the two purposes of a good-faith effort." *Palacios*, 46 S.W.3d at 879; see also *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010)("An expert report cannot merely state the expert's conclusions about the expert report requirements, rather "the expert must explain the basis of his statements to link his conclusions to the facts.").

In the present case, throughout his report, Dr. Miller recycles the same conclusory phrases and paragraphs. At several points in his report, Dr. Miller makes

the following conclusory statements: "more likely than not and based upon a reasonable degree of medical and nursing, probability and certainty, Mr. Huey Butler would not have suffered dehydration, acute kidney injury, hypovolemia, shock liver, encephalopathy, unnecessary worsening of his condition, an extensive hospitalization, pain, mental anguish, loss of dignity and ultimate death." <u>See,</u> *e.g.,* Page 15 of Appendix B. Dr. Miller report does not explain the basis of his statements or attempt to link his conclusions to the facts. Therefore, Dr. Miller's report is deficient as to causation.

It is not sufficient for an expert to provide a description of only a possibility of causation. *Taylor v. Fossett*, 320 S.W.3d 570, 577 (Tex. App.– Dallas 2010, no pet.). "The report must include the required information within its four corners." *Bowie v. Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002) (per curiam). "A conclusory report does not meet the Act's requirements[.]" *Id.* "An expert must explain, based on facts set out in the report, *how* and *why* the breach caused the injury." *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015, reh'g denied) (per curiam) (emphasis in original). "An expert cannot simply opine that the breach causes the injury." *Jelinek,* 328 S.W.3d at 539. "An expert's conclusion that 'in medical probability' one event caused another differs little, without an explanation tying the conclusion to the facts, from an *ipse dixit*, which [the Supreme Court] [has]

consistently criticized." *Id.* Although there are no magical words which an expert report must include to satisfy the good faith requirement, "mere invocation of the phrase 'medical probability' is likewise no guarantee that the report will be found adequate." *Id.* at 540. In the present case, Dr. Miller fails to set forth the causal relationship between alleged breaches of the standard of care by Oceans and the Plaintiff's alleged damages.

In the present case, Dr. Miller simply opines that based upon a reasonable degree of medical certainty, Mr. Huey Butler would not have suffered adverse conditions, but Dr. Miller fails to finish the sentence and explain how or why and alleged breach of the standard of care caused the alleged adverse conditions. Instead, Dr. Miller summarily states that the alleged breach caused the injury and subsequent death of Mr. Butler, instead of linking these conclusions to the facts.

## IV.   CONCLUSION

Dr. Miller's report is deficient in many regards. First, Dr. Miller's report and CV fail to show that he is qualified to offer opinions concerning the standard of care applicable to a psychiatric hospital. Second, Dr. Miller's report contains inadequate on the standard of care and breach. Third, Dr. Miller's opinions on causation are merely conclusory statements which are impermissible. Therefore, the trial court abused its discretion in denying Oceans Behavioral Hospital's Motion to Dismiss.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED, OCEANS BEHAVIORAL HEALTHCARE OF LONGVIEW, AUDUBON BEHAVIORAL HEALTHCARE OF LONGVIEW, LLC d//b/a OCEANS BEHAVIORAL HOSPITAL OF LONGVIEW and OCEANS ACQUISITION, INC**, Appellants in the above referenced appeal, ask the Court of Appeals to reverse the trial court's denial of Oceans' Motion to Dismiss and render the judgment in favor of Oceans dismissing the Appellee's case against it and for such other and further relief either at law or in equity to which Appellants may show just entitlement.

Respectfully submitted,

**KENT, ANDERSON, BUSH, FROST & METCALF, P.C.**
2320 Dueling Oaks Drive
Tyler, Texas 75703
(903) 579-7500
(903) 581-3701 (Fax)


By: /s/ *David W. Frost*
David W. Frost
State Bar No. 24002111
dfrost@tyler.net

**ATTORNEYS FOR APPELLANTS**

## CERTIFICATE OF COMPLIANCE

The undersigned certifies this brief complies with the typed-volume limitations of Texas Rule of Appellate Procedure 9. This brief contains 7,087 words and has been prepared in proportionately spaced typeface using Word Perfect X6 in 14 point Times New Roman font.

Dated: November 27, 2017

/s/ *David W. Frost*

David W. Frost


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically transmitted to the following counsel on this 27th day of November, 2017.

R. Daniel Sorey
The Sorey Law Firm, PLLC
109 W. Tyler Street
Longview, Texas 75601
    *Attorney for Appellee*

C. Victor Haley
1801 North Street
P.O. Drawer 631668
Nacogdoches, Texas 75963-1668
    *Attorney for Javen V. Cavazos, M.D.*

/s/ *David W. Frost*
David W. Frost

**APPENDIX** **TAB**

**Order Denying Defendant's Motion to Dismiss for**

**Failure to Provide Sufficient Medical Expert Report** . . . . . . . . . . . . . . . . **A**

**Expert Report of Keith E. Miller, M.D.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **B**

# APPENDIX "A"

## Order Denying Defendants' Objections to Plaintiff's Expert Report and Motion to Dismiss

CAUSE NO. 2017-110-CCL2

| | | |
|---|---|---|
| NANCY M. BUTLER, INDIVIDUALLY | § | IN THE COUNTY COURT |
| AND AS EXECUTOR OF THE ESTATE | § | |
| OF HUEY D. BUTLER, DECEASED, | § | |
| AND ON BEHALF OF THE WRONGFUL | § | |
| DEATH BENEFICIARIES OF | § | |
| HUEY D. BUTLER, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | AT LAW NO. 2 OF |
| | § | |
| JAVEN V. CAVAZOS, MD, | § | |
| OCEANS BEHAVIORAL HOSPITAL | § | |
| OF LONGVIEW, AUDUBON BEHAVIORAL | § | |
| HEALTHCARE OF LONGVIEW, LLC | § | |
| d/b/a OCEANS BEHAVIORAL HOSPITAL | § | |
| OF LONGVIEW, and OCEANS | § | |
| ACQUISITION, INC., | § | |
| | § | |
| **Defendants.** | § | GREGG COUNTY, TEXAS |

ORDER

On the 24th day of August, 2017, Defendants Oceans Behavioral Hospital of Longview, Audubon Behavioral Healthcare of Longview, LLC d/b/a Oceans Behavioral Hospital of Longview, and Oceans Acquisitions, Inc.'s Objections to Plaintiff's Chapter 74 Expert Report and Motions to Dismiss, as well as Plaintiff's Motion for Sanctions, came on to be heard.

The Court has made a careful review of the Court's file, the Chapter 74 Expert Report of Keith E. Miller, MD provided by Plaintiff, and the Objections and Motions to Dismiss filed on behalf of Defendants in this Cause, and sets forth its rulings with respect to said Report below:

1.    The Court finds that for the purposes of the requirements of Chapter 74 of the Texas Civil Practices and Remedies Code, that Keith Miller, MD, both by reason of training and experience, is sufficiently qualified to render the opinions contained in the Chapter 74 Expert Report provided in this Cause.

2. The Court finds that each of the separate Standards of Care set forth specific information about what the separate Defendants should have done differently. The Court further finds that the Chapter 74 Expert Report further sets forth the alleged breach on the part of both Defendants of the separate Standards of Care.

3. The Court further finds that Keith Miller, MD sufficiently sets forth the Causation between the alleged Breaches of Standards of Care and the injuries and ultimate passing of Huey D. Butler.

4. Considering the Chapter 74 Expert Report of Keith Miller, MD, the Court finds that the Plaintiffs have met the threshold requirements of Chapter 74 of the Texas Civil Practices and Remedies Code. Defendants' separate Objections are hereby OVERRULED.

5. Accordingly, Defendants' separate Motions to Dismiss are hereby DENIED.

6. Plaintiff's Motion for Sanctions is hereby DENIED.

SIGNED and ENTERED this 21st day of September, 2017.

_____
JUDGE VINCENT DULWEBER

# APPENDIX "B"

# Expert Report and Curriculum Vitae of Keith E. Miller, M .D.

# Keith E. Miller, M.D., F.A.A.F.P.
### 620 Tenaha Street • Center, Texas 75935
### (936) 598-2716 • Fax (936) 598-5059

April 10, 2017

Mr. R. Daniel Sorey, Attorney at Law
The Sorey Law Firm, P.L.L.C.
109 West Tyler Street
Longview, Texas 75601

Re: Mr. Huey Butler, Deceased

Dear Mr. Sorey:

Thank you for allowing me to review this case on behalf of Mr. Huey Butler and his family. My opinions in this report are based on the information I have reviewed to date and my education, training, and direct experience in the diagnosis and treatment of patients with conditions similar to those of Mr. Huey Butler as described in the materials I have reviewed and discussed in this report. Each opinion is based on reasonable medical and nursing, probability and certainty.

## BACKGROUND

My name is Keith E. Miller, M.D., and I give this report for the purpose of complying with any applicable provisions or codes. As my attached curriculum vitae demonstrates and which is incorporated into this report by reference, I am a Medical Doctor currently licensed to practice in the State of Texas and formerly licensed in the States of Louisiana and Arkansas. I have had numerous patients similar to Mr. Huey Butler. I am board-certified in family medicine and I have been in practice for more than 25 years. By virtue of my education, training, and direct experience, I am qualified to render opinions regarding the standards of care as they apply to this particular case.

I am over the age of 18, of sound mind, and capable of preparing this expert medical report. My opinions in this report are based on the information I have

EXHIBIT "A"

reviewed to date, as well as my education, training, knowledge, and direct experience in the diagnosis and treatment of patients with conditions similar to those of Ms. Huey Butler, as described in the materials I have reviewed and discussed in this report. My opinions are based on reasonable medical and nursing, probability and certainty. My opinions concern the care and treatment received by Mr. Huey Butler, or lack thereof, in regard to the applicable standards of care and the manner, in which the care rendered to Mr. Huey Butler by the physician and the healthcare facility in this case, fell below the standards of care and caused the injuries, illnesses, and ultimate death of Mr. Huey Butler.

It is impossible in an expert medical report to marshal all of the proof regarding the standard of care, breach, and causation and include it within my expert opinions in this case. My report represents a good faith effort to inform the physician and the health-care facility of the specific conduct that I am calling into question and to provide a basis for anyone to conclude that the claims in this matter have merit. Obviously, any defendant in a medical malpractice case has medical knowledge of medical terms which, when read in context with my opinions, will be clear to any competent physician or healthcare facility.

This report will provide a summary of my opinions, as of this date, regarding: 1) the applicable standards of care at issue in this case; 2) how the applicable standards of care were violated and breached; 3) how the violations and breaches of the applicable standards of care resulted in the injuries, illnesses, and subsequent death of Mr. Huey Butler; and 4) what the physician and health-care facility in this case should have done differently to prevent the injuries, illnesses, and subsequent death of Mr. Butler. I reserve the right to amend, or add to, my opinions upon further review of records, testimony, or facts, as they become available, or upon re-review of existing materials.

## MY EXPERTISE

I am a medical doctor currently licensed to practice in the State of Texas and formerly licensed in the States of Louisiana and Arkansas. I have been a licensed medical doctor since 1985, have been practicing medicine continuously since then, including during the time of this claim, and as part of my practice, have been, and am currently, involved in the diagnosis, care, and treatment of many patients similar to Mr. Huey Butler. I am familiar with the diagnosis and treatment of patients with depression, dementia, related illnesses, and their complications, along with any other conditions experienced by Mr. Huey Butler. I am familiar with the standards of care applicable to physicians, nurses, healthcare facilities, and their staffs that treat patients such as Mr. Butler. My training is similar to the training of the healthcare providers, nurses, and facility staff in this case.

2

EXHIBIT "A"

After graduating from medical school in 1985 at the University of Arkansas, I received additional training and experience in a family practice residency program which I successfully completed in 1988. I have had over 25 years' experience practicing medicine in office settings, hospitals, nursing homes, rehabilitation centers, emergency departments, and other healthcare facilities. I am board-certified in Family Medicine by the American Board of Family Medicine, and have been in practice for more than 25 years. By virtue of my education, training, knowledge and direct experience, I am qualified to render opinions regarding the standards of care as they apply to this particular case, including the standards of care applicable to physicians, nurses, and healthcare facilities and their staffs treating patients for depression, dementia, related illnesses, and their complications, along with any other conditions exhibited by Mr. Huey Butler, because I have treated many patients with these conditions.

## A COPY OF MY CV IS ATTACHED

My attached curriculum vitae is incorporated herein as part of my report.

## MATERIALS REVIEWED

The specific medical records of Mr. Huey Butler which I have reviewed include his medical records from the following:

1) Oceans Behavioral Hospital of Longview in Longview, Texas;
2) Longview Regional Medical Center in Longview, Texas; and
3) Havencare Nursing and Rehab SNF in Longview, Texas.

## SIGNIFICANT FACTS

Mr. Huey Butler was an adult male whose date of birth was August 7, 1940. In March 2015, Mr. Butler was 74 years-old.

Mr. Butler had a history of major depressive disorder and dementia for which he had been receiving outpatient treatment. In order to better manage his symptoms he was admitted to inpatient care for his mental disturbances at Oceans Behavioral Hospital of Longview in Longview, Texas on March 10, 2015. His primary physician during this stay was Dr. Javen Cavazos. He remained a patient in this facility for less than two weeks until March 23, 2015.

Dr. Cavazos treated Mr. Butler with multiple medications for his symptoms including tranquilizers and antidepressants. In the medical records, Dr. Cavazos documented that Mr. Butler suffered from dementia. Dr. Cavazos treated Mr. Butler with various doses of antipsychotic medication during his entire stay at Oceans

3

EXHIBIT "A"

Behavioral Hospital.

Approximately mid-way through his stay at this facility, Mr. Butler had an "incident" during which he became confused and may have struck at a staff member of this facility. Following this incident, Mr. Butler's psychotropic medications were increased.

Almost immediately following this episode, Mr. Butler began showing signs of being overly sedated. This was noted frequently in the nursing notes of Oceans Behavioral Hospital.

During this same period of time, Dr. Cavazos was making progress notes almost daily that were inconsistent and contradictory. On March 16, 2015, Dr. Cavazos make a progress note which stated Mr. Butler "…has been compliant with medications."

However, on the very next day, March 17, 2015, Dr. Cavazos stated in another progress note that Mr. Butler "…has been refusing his medications for the past several days" and had also been refusing to have his vital signs taken.

On March 19, 2015, Dr. Cavazos stated in another progress noted that Mr. Butler "…continues to be…lethargic throughout the day".

In a final progress note dated March 20, 2015, Dr. Cavazos documented in the medical records that Mr. Butler "…continues to be sedated".

Despite documenting throughout the medical record that Mr. Butler had not been compliant with taking his medications and treatments, Dr. Cavazos stated in the discharge summary of Mr. Butler's short stay that "While in the facility the patient was compliant with medications".

On March 23, 2015, after being a patient in Oceans Behavioral Hospital for only 13 days, Mr. Butler was transferred from this facility by emergency medical services to Longview Regional Medical Center in Longview, Texas. Upon admission to the hospital, Mr. Butler was noted to be suffering from "mental status changes secondary to medication" and "over-sedation". The medical records of this hospital stay also documented that Mr. Butler was suffering from acute kidney injury, hypovolemia, and shock liver, all due to dehydration. Mr. Butler developed all of these conditions while he was a patient in the care of Oceans Behavioral Hospital for only 13 days.

After leaving Oceans Behavioral Hospital, documentation with photographs revealed that Mr. Butler had been restrained physically while a patient at this facility.

4

EXHIBIT "A"

These photographs revealed the presence of ligature marks on multiple parts of Mr. Butler's body.

On April 2, 2015, Mr. Butler was discharged from the hospital and admitted to a nursing home, Havencare Nursing and Rehab SNF in Longview, Texas.

The medical records of Mr. Butler from Longview Regional Medical Center and Havencare Nursing and Rehab SNF, documented that Mr. Butler had suffered encephalopathy or permanent brain damage as a result of his stay at Oceans Behavioral Hospital.

On July 10, 2015, Mr. Butler was readmitted to Havencare Nursing and Rehab SNF and was also admitted to hospice care on that same date due to the terminal nature of Mr. Butler's medical condition.

On August 3, 2015, Mr. Butler died in the nursing home as a result of the conditions from which he developed and suffered while a patient in the care of Oceans Behavioral Hospital only 4 months earlier.

## FAMILIARITY WITH THE STANDARD OF CARE

At the time of the care and treatment of Mr. Huey Butler by Oceans Behavioral Hospital in Longview, Texas and Dr. Javen Cavazos during March 2015, I was familiar with the minimum medical standards of care applicable to the assessment, diagnosis and treatment of patients with depression, dementia, and related illnesses, as well as their complications and other medical conditions similar to those experienced by Mr. Huey Butler and described in the referenced medical records. I am familiar with the medical and nursing standards of care for the above referenced conditions applicable to Oceans Behavioral Hospital of Longview in Longview, Texas and Dr. Javen Cavazos. The minimum standards of care for treatment of patients with similar signs, symptoms, and conditions as Mr. Huey Butler that are the basis of this report are universally-accepted standards of care and do not differ from community to community.

From the time of the medical treatment of Mr. Huey Butler during March 2015, and through the present, I have had an active clinical practice as a family practitioner in Center, Texas that includes providing care to adult patients in healthcare facilities such as Mr. Huey Butler. During my career as a family practitioner, I have worked with and or supervised medical office staff, hospital staff, nursing home staff, and rehabilitation center staff, including medical technologists and nurses, in the care of my patients. I have also participated in the development and use of protocols, policies and procedures for the care of patients with depression, dementia, and related illnesses as well as their causes and

5

EXHIBIT "A"

complications, including adults such as Mr. Huey Butler. In addition, based on my education, training, knowledge, and direct experience, I am familiar with the accepted and expected, standards of care, as listed below, for healthcare facilities, who take care of patients with conditions such as depression, dementia, and related illnesses, as well as their complications, and can offer opinions on the standards of care, the breaches of the standards of care and the causation of the injuries from these breaches.

In my medical practice, I routinely rely on medical records, nursing records, lab reports, diagnostic tests and images, consulting physician reports and other patient data. I consider materials of this type to be generally reliable, unless evidenced otherwise, and they are the type of materials routinely relied upon by physicians and clinical staff in providing care to patients.

## CASE SPECIFIC EXPERTISE

At the time of the medical treatment of Mr. Huey Butler, during March 2015, I was treating patients with symptoms similar to those experienced by Mr. Butler. I am familiar with the accepted medical and nursing standards of care applicable to the assessment, diagnosis, and treatment of patients with depression, dementia, and related illnesses, as well as any other medical conditions similar to those experienced by Mr. Huey Butler during that time as described in the referenced medical records. I am familiar with the standards of care for physicians, nurses, and healthcare facility staff treating patients such as Mr. Butler. I am familiar with the medical and nursing standards of care for the above referenced medical conditions, including depression, dementia, related illnesses, and their complications, as they apply to Oceans Behavioral Hospital and Dr. Javen Cavazos. The accepted and applicable standards of care for the treatment of patients with similar signs, symptoms, and conditions as Mr. Huey Butler, that are the basis of this report, are universally-accepted standards of care and do not differ from community to community, and also apply to the specific medical care provided to Mr. Butler in this case. The accepted medical and nursing standards of care for the assessment, diagnosis, and treatment of medical conditions similar to those of Mr. Huey Butler apply to all healthcare center facilities. I know the accepted standards of care, the breaches and violations of the standards of care, and the causation link between the breaches and violations of the standards of care and the injuries and illnesses of Mr. Huey Butler, as they apply to Oceans Behavioral Hospital and Dr. Javen Cavazos, on the basis of my education, knowledge, training, and direct experience.

I acquired this education, knowledge, training and experience through:

1) My attending, and successfully completing, medical school classes, and residency, that teach the evaluation, diagnosis, care and treatment of patients with

6

EXHIBIT "A"

the same or similar conditions as Mr. Huey Butler, and for depression, dementia, and their complications;

2) Practical experience of diagnosing and treating patients with the same or similar conditions as Mr. Huey Butler, and for depression, dementia, and their complications;

3) Discussions with colleagues at yearly conferences, seminars and meetings;

4) Study of technical works routinely published in textbooks, journals and literature concerning the evaluation, diagnosis, care and treatment of patients with the same or similar conditions as Mr. Huey Butler, and for depression, dementia, and their complications;

5) My routine discussions and consultations with other physicians who also treat patients with the same or similar conditions as Mr. Huey Butler, and for depression, dementia, and their complications;

6) My routine and regular contact with nursing home nurses, staff and residents who take care of patients with the same or similar conditions as Mr. Huey Butler, and for depression, dementia, and their complications;

7) My knowledge and experience giving lectures and in-service conferences to the nurses and staff;

8) My experience serving on numerous hospital and nursing home committees; and

9) My observation of nurses and nurse conduct, supervising residents, and instructing nurses and residents in the evaluation, diagnosis, care and treatment of patients the same as, or similar to Mr. Huey Butler, and for depression, dementia, and their complications.

## FACILITY - PATIENT RELATIONSHIP

Based upon the above facts, there was a facility-patient relationship established between Mr. Huey Butler and Oceans Behavioral Hospital of Longview in Longview, Texas.

## PHYSICIAN - PATIENT RELATIONSHIP

7

EXHIBIT "A"

Based upon the above facts, there was a physician-patient relationship established between Mr. Huey Butler and Dr. Javen Cavazos.

## DUTY

There was a duty owed to Mr. Huey Butler by Oceans Behavioral Hospital of Longview in Longview, Texas, to do what a reasonable healthcare facility would have done under the same or similar circumstances, or not to do what a reasonable healthcare facility would not have done under the same or similar circumstances.

There was a duty owed to Mr. Huey Butler by Dr. Javen Cavazos to do what a reasonable physician would have done under the same or similar circumstances, or not to do what a reasonable physician would not have done under the same or similar circumstances.

## SPECIFIC STANDARDS OF CARE IN THE CASE OF MR. HUEY BUTLER

The accepted standards of medical and nursing care applicable to Dr. Javen Cavazos and Oceans Behavioral Hospital of Longview in Longview, Texas, in their care of Mr. Huey Butler during March 2015, include, but are not limited to, the following standards:

1. The standard of care required that in July 2015, during the time of their care and treatment of Mr. Huey Butler, the staff of Oceans Behavioral Hospital should have taken any necessary measures to ensure this patient remained well hydrated at all times.

2. The standard of care required that in July 2015 during the time of their care and treatment of Mr. Huey Butler, the staff of Oceans Behavioral Hospital should have taken any necessary measures to ensure this patient did not suffer over-sedation or adverse side effects of medications.

3. The standard of care required that in July 2015 during the time of their care and treatment of Mr. Huey Butler, the staff of Oceans Behavioral Hospital should not have restrained this patient by physical means, or with chemical means using medications.

4. The standard of care required that in July 2015 during the time of their care and treatment of Mr. Huey Butler, the staff of Oceans Behavioral Hospital should not have administered antipsychotic medications to a patient such as Mr. Butler who is known to have dementia.

8

EXHIBIT "A"

**5.** The standard of care required that in July 2015 during the time of her care and treatment of Mr. Huey Butler, Dr. Javen Cavazos should have taken any necessary measures to ensure this patient remained well hydrated at all times.

**6.** The standard of care required that in July 2015 during the time of her care and treatment of Mr. Huey Butler, Dr. Javen Cavazos should have taken any necessary measures to ensure this patient did not suffer over-sedation or adverse side effects of medications.

**7.** The standard of care required that in July 2015 during the time of her care and treatment of Mr. Huey Butler, Dr. Javen Cavazos should not have restrained this patient by physical means, or with chemical means using medications.

**8.** The standard of care required that in July 2015 during the time of her care and treatment of Mr. Huey Butler, Dr. Javen Cavazos should not have prescribed antipsychotic medications to a patient such as Mr. Butler who was elderly and known to have dementia.

## BREACHES AND VIOLATIONS OF THE SPECIFIC STANDARDS OF CARE IN THE CASE OF MR. HUEY BUTLER

Based on my education, knowledge, medical training, direct experience, and treatment of patients with medical conditions similar to those of Mr. Huey Butler, Oceans Behavioral Hospital of Longview in Longview, Texas, and Dr. Javen Cavazos, failed to meet the applicable standards of medical and nursing care, in their care and treatment of Mr. Huey Butler, and in reasonable medical and nursing, probability and certainty, contributed to, and directly caused, the injury, harm, and ultimate death suffered by Mr. Huey Butler. The breaches and violations of the specific standards of care in the case of Mr. Huey Butler are as follows:

**1.** Oceans Behavioral Hospital failed the standard of care which required that in July 2015, during the time of their care and treatment of Mr. Huey Butler, the staff of Oceans Behavioral Hospital should have taken any necessary measures to ensure this patient remained well hydrated at all times.

**2.** Oceans Behavioral Hospital failed the standard of care which required that in July 2015 during the time of their care and treatment of Mr. Huey Butler, the staff of Oceans Behavioral Hospital should have taken any necessary measures to ensure this patient did not suffer over-sedation or adverse side effects of medications.

**3.** Oceans Behavioral Hospital failed the standard of care which required that in July 2015 during the time of their care and treatment of Mr. Huey Butler, the staff of

9

Oceans Behavioral Hospital should not have restrained this patient by physical means, or with chemical means using medications.

4.   Oceans Behavioral Hospital Failed the standard of care which required that in July 2015 during the time of their care and treatment of Mr. Huey Butler, the staff of Oceans Behavioral Hospital should not have administered antipsychotic medications to a patient such as Mr. Butler who is known to have dementia.

5.   Dr. Javen Cavazos failed the standard of care which required that in July 2015 during the time of her care and treatment of Mr. Huey Butler, Dr. Javen Cavazos should have taken any necessary measures to ensure this patient remained well hydrated at all times.

6.   Dr. Javen Cavazos failed the standard of care which required that in July 2015 during the time of her care and treatment of Mr. Huey Butler, Dr. Javen Cavazos should have taken any necessary measures to ensure this patient did not suffer over-sedation or adverse side effects of medications.

7.   Dr. Javen Cavazos failed the standard of care which required that in July 2015 during the time of her care and treatment of Mr. Huey Butler, Dr. Javen Cavazos should not have restrained this patient by physical means, or with chemical means using medications.

8.   Dr. Javen Cavazos failed the standard of care which required that in July 2015 during the time of her care and treatment of Mr. Huey Butler, Dr. Javen Cavazos should not have prescribed antipsychotic medications to a patient such as Mr. Butler who was elderly and known to have dementia.

## HOW THE BREACHES AND VIOLATIONS OF THE SPECIFIC STANDARDS OF CARE CAUSED INJURY, HARM, DAMAGES AND ULTIMATE DEATH IN THE CASE OF MR. HUEY BUTLER

1.   Oceans Behavioral Hospital failed the standard of care which required that in July 2015, during the time of their care and treatment of Mr. Huey Butler, the staff of Oceans Behavioral Hospital should have taken any necessary measures to ensure this patient remained well hydrated at all times.

Mr. Huey Butler was an adult male whose date of birth was August 7, 1940. In March 2015, Mr. Butler was 74 years-old.

Mr. Butler had a history of major depressive disorder and dementia for which he had been receiving outpatient treatment. In order to better manage his symptoms he was admitted to inpatient care for his mental disturbances at Oceans Behavioral Hospital of Longview in Longview, Texas on March 10, 2015. His

10

EXHIBIT "A"

primary physician during this stay was Dr. Javen Cavazos. He remained a patient in this facility for less than two weeks until March 23, 2015.

Dr. Cavazos treated Mr. Butler with multiple medications for his symptoms including tranquilizers and antidepressants. In the medical records, Dr. Cavazos documented that Mr. Butler suffered from dementia. Dr. Cavazos treated Mr. Butler with various doses of antipsychotic medication during his entire stay at Oceans Behavioral Hospital.

Approximately mid-way through his stay at this facility, Mr. Butler had an "incident" during which he became confused and may have struck at a staff member of this facility. Following this incident, Mr. Butler's psychotropic medications were increased.

Almost immediately following this episode, Mr. Butler began showing signs of being overly sedated. This was noted frequently in the nursing notes of Oceans Behavioral Hospital.

During this same period of time, Dr. Cavazos was making progress notes almost daily that were inconsistent and contradictory. On March 16, 2015, Dr. Cavazos make a progress note which stated Mr. Butler "...has been compliant with medications."

However, on the very next day, March 17, 2015, Dr. Cavazos stated in another progress note that Mr. Butler "...has been refusing his medications for the past several days" and had also been refusing to have his vital signs taken.

On March 19, 2015, Dr. Cavazos stated in another progress noted that Mr. Butler "...continues to be...lethargic throughout the day".

In a final progress note dated March 20, 2015, Dr. Cavazos documented in the medical records that Mr. Butler "...continues to be sedated".

Despite documenting throughout the medical record that Mr. Butler had not been compliant with taking his medications and treatments, Dr. Cavazos stated in the discharge summary of Mr. Butler's short stay that "While in the facility the patient was compliant with medications".

On March 23, 2015, after being a patient in Oceans Behavioral Hospital for only 13 days, Mr. Butler was transferred from this facility by emergency medical services to Longview Regional Medical Center in Longview, Texas. Upon admission to the hospital, Mr. Butler was noted to be suffering from "mental status changes secondary to medication" and "over-sedation". The medical records of this hospital

11

stay also documented that Mr. Butler was suffering from acute kidney injury, hypovolemia, and shock liver, all due to dehydration. Mr. Butler developed all of these conditions while he was a patient in the care of Oceans Behavioral Hospital for only 13 days.

After leaving Oceans Behavioral Hospital, documentation with photographs revealed that Mr. Butler had been restrained physically while a patient at this facility. These photographs revealed the presence of ligature marks on multiple parts of Mr. Butler's body.

On April 2, 2015, Mr. Butler was discharged from the hospital and admitted to a nursing home, Havencare Nursing and Rehab SNF in Longview, Texas.

Both the medical records of Mr. Butler from Longview Regional Medical Center and Havencare Nursing and Rehab SNF, documented that Mr. Butler had suffered encephalopathy or permanent brain damage as a result of his stay at Oceans Behavioral Hospital.

On July 10, 2015, Mr. Butler was readmitted to Havencare Nursing and Rehab SNF and was also admitted to hospice care on that same date due to the terminal nature of Mr. Butler's medical condition.

On August 3, 2015, Mr. Butler died in the nursing home as a result of the conditions from which he developed and suffered while a patient in the care of Oceans Behavioral Hospital only 4 months earlier.

As a direct cause, Oceans Behavioral Hospital of Longview in Longview, Texas, and its staff failed to comply with the standards of care regarding Mr. Huey Butler. The failure to comply with these standards caused, within a reasonable degree of medical and nursing, probability and certainty, Mr. Butler to become dehydrated, which compounded his ability to fight illness, and compromised his ability to heal and deteriorated his physical function.

To meet these standards, Oceans Behavioral Hospital of Longview in Longview, Texas, and its staff were required to recognize and act on an accurate assessment that Mr. Butler was at risk for dehydration as evidenced by his oral intake records, act on the fact that Mr. Butler was totally dependent on staff for both anticipation of needs and physical assistance of all nourishment including fluids, and monitor Mr. Butler's fluid intake and output each shift, which must be done consistently and accurately for nurses, physicians, and dieticians to evaluate his fluid needs and response to medications.

Oceans Behavioral Hospital of Longview in Longview, Texas, and its staff

12

EXHIBIT "A"

were further required to discover and consistently record Mr. Butler's urine color, urine odor, and skin turgor, presence of edema, and whether the mucous membranes were moist or dry, timely notify Mr. Butler's physician of changes, specifically weight loss or signs or symptoms of dehydration to prevent further complications, and give Mr. Butler food to eat and water to drink and help him eat and drink.

Had this healthcare facility provided adequate care to Mr. Huey Butler by ensuring through appropriate means, that Mr. Butler was adequately hydrated, then more likely than not and to a reasonable degree of medical and nursing, probability and certainty, Mr. Butler would not have suffered from dehydration and its related complications including acute kidney injury, hypovolemia, and shock liver. Furthermore, Mr. Butler's dehydration made him even more susceptible to medication side-effects including over-sedation. A reasonable healthcare facility practicing according to acceptable standards of care would have intervened with appropriate treatment and Mr. Huey Butler would not have suffered from dehydration while a patient in the care of Oceans Behavioral Hospital. This would have prevented Mr. Butler from suffering acute kidney injury, hypovolemia, shock liver, encephalopathy, unnecessary worsening of his condition, an extensive hospitalization, pain, mental anguish, loss of dignity, and ultimate death.

2. Oceans Behavioral Hospital failed the standard of care which required that in July 2015 during the time of their care and treatment of Mr. Huey Butler, the staff of Oceans Behavioral Hospital should have taken any necessary measures to ensure this patient did not suffer over-sedation or adverse side effects of medications.

Dr. Cavazos treated Mr. Butler with multiple medications for his symptoms including tranquilizers and antidepressants. In the medical records, Dr. Cavazos documented that Mr. Butler suffered from dementia. Dr. Cavazos treated Mr. Butler with various doses of antipsychotic medication during his entire stay at Oceans Behavioral Hospital.

Approximately mid-way through his stay at this facility, Mr. Butler had an "incident" during which he became confused and may have struck at a staff member of this facility. Following this incident, Mr. Butler's psychotropic medications were increased.

Almost immediately following this episode, Mr. Butler began showing signs of being overly sedated. This was noted frequently in the nursing notes of Oceans Behavioral Hospital.

During this same period of time, Dr. Cavazos was making progress notes almost daily that were inconsistent and contradictory. On March 16, 2015, Dr.

13

Cavazos make a progress note which stated Mr. Butler "...has been compliant with medications."

However, on the very next day, March 17, 2015, Dr. Cavazos stated in another progress note that Mr. Butler "...has been refusing his medications for the past several days" and had also been refusing to have his vital signs taken.

On March 19, 2015, Dr. Cavazos stated in another progress noted that Mr. Butler "...continues to be...lethargic throughout the day".

In a final progress note dated March 20, 2015, Dr. Cavazos documented in the medical records that Mr. Butler "...continues to be sedated".

Despite documenting throughout the medical record that Mr. Butler had not been compliant with taking his medications and treatments, Dr. Cavazos stated in the discharge summary of Mr. Butler's short stay that "While in the facility the patient was compliant with medications".

On March 23, 2015, after being a patient in Oceans Behavioral Hospital for only 13 days, Mr. Butler was transferred from this facility by emergency medical services to Longview Regional Medical Center in Longview, Texas. Upon admission to the hospital, Mr. Butler was noted to be suffering from "mental status changes secondary to medication" and "over-sedation". The medical records of this hospital stay also documented that Mr. Butler was suffering from acute kidney injury, hypovolemia, and shock liver, all due to dehydration. Mr. Butler developed all of these conditions while he was a patient in the care of Oceans Behavioral Hospital for only 13 days.

On April 2, 2015, Mr. Butler was discharged from the hospital and admitted to a nursing home, Havencare Nursing and Rehab SNF in Longview, Texas.

Both the medical records of Mr. Butler from Longview Regional Medical Center and Havencare Nursing and Rehab SNF, documented that Mr. Butler had suffered encephalopathy or permanent brain damage as a result of his stay at Oceans Behavioral Hospital.

On July 10, 2015, Mr. Butler was readmitted to Havencare Nursing and Rehab SNF and was also admitted to hospice care on that same date due to the terminal nature of Mr. Butler's medical condition.

On August 3, 2015, Mr. Butler died in the nursing home as a result of the conditions from which he developed and suffered while a patient in the care of Oceans Behavioral Hospital only 4 months earlier.

14

EXHIBIT "A"

As a direct cause, Oceans Behavioral Hospital of Longview in Longview, Texas, and its staff failed to comply with the standards of care regarding Mr. Huey Butler. The failure to comply with these standards caused, within a reasonable degree of medical and nursing, probability and certainty, Mr. Butler to suffer side effects from medications including over-sedation, which compounded his ability to fight illness, and compromised his ability to heal and deteriorated his physical function.

To meet these standards, Oceans Behavioral Hospital of Longview in Longview, Texas, and its staff were required to recognize and act on an accurate assessment that Mr. Butler was at risk for side effects from medications including over-sedation, act on the fact that Mr. Butler was totally dependent on staff for both anticipation of needs and physical assistance, and monitor Mr. Butler for medication side effects including over-sedation each shift, which must be done consistently and accurately for nurses and physicians to evaluate his condition.

Oceans Behavioral Hospital of Longview in Longview, Texas, and its staff were further required to notify Mr. Butler's physician of changes in his condition in order to prevent further complications.

Had this healthcare facility provided adequate care to Mr. Huey Butler by ensuring through appropriate means, that Mr. Butler did not suffer medication side effects including over-sedation, then more likely than not and to a reasonable degree of medical and nursing, probability and certainty, Mr. Butler would not have suffered from dehydration, acute kidney injury, hypovolemia, shock liver, encephalopathy, unnecessary worsening of his condition, an extensive hospitalization, pain, mental anguish, loss of dignity, and ultimate death.

3.    Oceans Behavioral Hospital failed the standard of care which required that in July 2015 during the time of their care and treatment of Mr. Huey Butler, the staff of Oceans Behavioral Hospital should not have restrained this patient by physical means, or with chemical means using medications.

After leaving Oceans Behavioral Hospital, documentation with photographs revealed that Mr. Butler had been restrained physically while a patient at this facility. These photographs revealed the presence of ligature marks on multiple parts of Mr. Butler's body.

There is no information, documentation, or rationale in Mr. Butler's medical records from Oceans Behavioral Hospital that there was any need for physical restraints during this patient's short stay in this facility. There was no indication that the need for such restraints outweighed their risks. Such restraints are particularly

15

dangerous in a patient such as Mr. Butler who was already at risk for dehydration. Restraints increased the likelihood even more that Mr. Butler would become dangerously dehydrated in that he would not be able to hydrate himself when he became thirsty.

The medical records of this case contain photographs documenting the physical injuries which Mr. Butler suffered as a result of the physical restraints placed upon him by the staff of Oceans Behavioral hospital. These photographs demonstrate clear evidence of some type of ligature marks over multiple parts of Mr. Butler's body. Even in the extreme case when physical restraints are justified in a patient, they should never result in ligature marks being left. These photographs document that the physical restraints placed upon Mr. Butler were improperly placed and not removed or adjusted in a timely manner when they were injuring Mr. Butler.

In addition to the physical restraints used upon Mr. Butler, the medical records of this patient made at Oceans Behavioral Hospital document that Mr. Butler was also "chemically restrained" in that the medications and combinations of medications administered to him caused this patient to be so sedated that it constituted another form of restraint that carried with it the same risks and potential complications as any physical restraint could. As was the case with the physical restraints, there was no information, documentation, or rationale in Mr. Butler's medical records from Oceans Behavioral Hospital that there was any need for chemically restraining this patient during his short stay in this facility. There was no indication that the need for such treatment outweighed its risk. Such method of restraining a patient is particularly dangerous in a patient such as Mr. Butler who was already at risk for dehydration. Restraining a patient such as Mr. Butler in this case was even more dangerous in regards to his dehydrated status in that he would not be able to hydrate himself when he became thirsty.

To meet these standards, Oceans Behavioral Hospital of Longview in Longview, Texas, and its staff were required to recognize and act on an accurate assessment that Mr. Butler was at high risk for harm and complications if he were physically or chemically restrained. Such restraints are well known to have a high incidence of complications and frequently cause harm and injury to patients as was seen in the case of Mr. Butler. Mr. Butler was totally dependent on staff for both anticipation of needs and physical assistance, and was unable to express his needs to the staff of this facility. Mr. Butler was unable to let anyone know when he was suffering harm and injuries from these restraints.

Oceans Behavioral Hospital of Longview in Longview, Texas, and its staff were further required to document in the medical records that the use of physical or chemical restraints in Mr. Huey Butler was clearly indicated and the benefits of these

16

EXHIBIT "A"

restraints clearly outweighed the risks and possible complications that could develop.

Had this healthcare facility provided adequate care to Mr. Huey Butler by not using physical or chemical restraints, then more likely than not and to a reasonable degree of medical and nursing, probability and certainty, Mr. Butler would not have suffered from dehydration, acute kidney injury, hypovolemia, shock liver, encephalopathy, unnecessary worsening of his condition, an extensive hospitalization, pain, mental anguish, loss of dignity, and ultimate death.

4.    Oceans Behavioral Hospital failed the standard of care which required that in July 2015 during the time of their care and treatment of Mr. Huey Butler, the staff of Oceans Behavioral Hospital should not have administered antipsychotic medications to a patient such as Mr. Butler who is known to have dementia.

Mr. Butler had a history of major depressive disorder and dementia for which he had been receiving outpatient treatment. In order to better manage his symptoms he was admitted to inpatient care for his mental disturbances at Oceans Behavioral Hospital of Longview in Longview, Texas on March 10, 2015. His primary physician during this stay was Dr. Javen Cavazos. He remained a patient in this facility for less than two weeks until March 23, 2015.

Dr. Cavazos treated Mr. Butler with multiple medications for his symptoms including tranquilizers and antidepressants. In the medical records, Dr. Cavazos documented that Mr. Butler suffered from dementia. Dr. Cavazos treated Mr. Butler with various doses of antipsychotic medication during his entire stay at Oceans Behavioral Hospital.

While in Oceans Behavioral Hospital, Mr. Huey Butler was administered at least two different kinds of medications that are known as "antipsychotics". The United States Food and Drug Administration (FDA) has determined that medications in this classification should not be used in patients who have dementia, due to an increased risk of sudden death in such patients. As a result, the FDA has issued a "Black Box Warning" to this effect. A Black Box Warning is the FDA's strongest warning regarding the risks and dangers of a medication.

In the United States, a boxed warning (or "black box warning", colloquially) is a type of warning that appears on the package insert for certain prescription drugs, so called because the U.S. Food and Drug Administration specifies that it is formatted with a 'box' or border around the text. The purpose of this border is to call the attention of prescribers and consumers to a particular medication in regards to its peculiar risks and hazards. The FDA can require a pharmaceutical company to place a boxed warning on the labeling of a prescription drug, or in literature

17

EXHIBIT "A"

describing it. It is the strongest warning that the FDA requires, and signifies that medical studies indicate that the drug carries a significant risk of serious or even life-threatening adverse effects.

The medical records of Mr. Huey Butler made at Oceans Behavioral Hospital clearly documented that this patient suffered from dementia during the time he was at this facility and was at high risk for illnesses and injuries caused by this condition. Any reasonable healthcare facility should have been aware of the risks and hazards associated with administering antipsychotic medication to an elderly resident with dementia. Nevertheless, Oceans Behavioral Hospital still failed to exercise proper care by administering antipsychotic medication to a patient with advanced age and dementia, such as Mr. Huey Butler.

Had this healthcare facility provided adequate care to Mr. Huey Butler by ascertaining the seriousness of Mr. Butler's condition and not administering an antipsychotic medication to a patient such as Mr. Butler with advanced age and dementia, then more likely than not and to a reasonable degree of medical and nursing, probability and certainty, a reasonable healthcare facility practicing according to acceptable standards would have provided appropriate treatment and Mr. Huey Butler would not have suffered dehydration, acute kidney injury, hypovolemia, shock liver, encephalopathy, unnecessary worsening of his condition, an extensive hospitalization, pain, mental anguish, loss of dignity, and ultimate death.

5. Dr. Javen Cavazos failed the standard of care which required that in July 2015 during the time of her care and treatment of Mr. Huey Butler, Dr. Javen Cavazos should have taken any necessary measures to ensure this patient remained well hydrated at all times.

Mr. Huey Butler was an adult male whose date of birth was August 7, 1940. In March 2015, Mr. Butler was 74 years-old.

Mr. Butler had a history of major depressive disorder and dementia for which he had been receiving outpatient treatment. In order to better manage his symptoms he was admitted to inpatient care for his mental disturbances at Oceans Behavioral Hospital of Longview in Longview, Texas on March 10, 2015. His primary physician during this stay was Dr. Javen Cavazos. He remained a patient in this facility for less than two weeks until March 23, 2015.

Dr. Cavazos treated Mr. Butler with multiple medications for his symptoms including tranquilizers and antidepressants. In the medical records, Dr. Cavazos documented that Mr. Butler suffered from dementia. Dr. Cavazos treated Mr. Butler with various doses of antipsychotic medication during his entire stay at Oceans

18

EXHIBIT "A"

Behavioral Hospital.

Approximately mid-way through his stay at this facility, Mr. Butler had an "incident" during which he became confused and may have struck at a staff member of this facility. Following this incident, Mr. Butler's psychotropic medications were increased.

Almost immediately following this episode, Mr. Butler began showing signs of being overly sedated. This was noted frequently in the nursing notes of Oceans Behavioral Hospital.

During this same period of time, Dr. Cavazos was making progress notes almost daily that were inconsistent and contradictory. On March 16, 2015, Dr. Cavazos make a progress note which stated Mr. Butler "...has been compliant with medications."

However, on the very next day, March 17, 2015, Dr. Cavazos stated in another progress note that Mr. Butler "...has been refusing his medications for the past several days" and had also been refusing to have his vital signs taken.

On March 19, 2015, Dr. Cavazos stated in another progress noted that Mr. Butler "...continues to be...lethargic throughout the day".

In a final progress note dated March 20, 2015, Dr. Cavazos documented in the medical records that Mr. Butler "...continues to be sedated".

Despite documenting throughout the medical record that Mr. Butler had not been compliant with taking his medications and treatments, Dr. Cavazos stated in the discharge summary of Mr. Butler's short stay that "While in the facility the patient was compliant with medications".

On March 23, 2015, after being a patient in Oceans Behavioral Hospital for only 13 days, Mr. Butler was transferred from this facility by emergency medical services to Longview Regional Medical Center in Longview, Texas. Upon admission to the hospital, Mr. Butler was noted to be suffering from "mental status changes secondary to medication" and "over-sedation". The medical records of this hospital stay also documented that Mr. Butler was suffering from acute kidney injury, hypovolemia, and shock liver, all due to dehydration. Mr. Butler developed all of these conditions while he was a patient in the care of Oceans Behavioral Hospital for only 13 days.

After leaving Oceans Behavioral Hospital, documentation with photographs revealed that Mr. Butler had been restrained physically while a patient at this facility.

19

EXHIBIT "A"

These photographs revealed the presence of ligature marks on multiple parts of Mr. Butler's body.

On April 2, 2015, Mr. Butler was discharged from the hospital and admitted to a nursing home, Havencare Nursing and Rehab SNF in Longview, Texas.

Both the medical records of Mr. Butler from Longview Regional Medical Center and Havencare Nursing and Rehab SNF, documented that Mr. Butler had suffered encephalopathy or permanent brain damage as a result of his stay at Oceans Behavioral Hospital.

On July 10, 2015, Mr. Butler was readmitted to Havencare Nursing and Rehab SNF and was also admitted to hospice care on that same date due to the terminal nature of Mr. Butler's medical condition.

On August 3, 2015, Mr. Butler died in the nursing home as a result of the conditions from which he developed and suffered while a patient in the care of Oceans Behavioral Hospital only 4 months earlier.

As a direct cause, Dr. Javen Cavazos failed to comply with the standards of care regarding Mr. Huey Butler. The failure to comply with these standards caused, within a reasonable degree of medical and nursing, probability and certainty, Mr. Butler to become dehydrated, which compounded his ability to fight illness, and compromised his ability to heal and deteriorated his physical function.

While Mr. Butler was a patient in Oceans Behavioral Hospital, Dr. Cavazos made progress notes which claimed she personally examined this patient on nearly a daily basis. Any reasonable physician practicing according to the acceptable standards of care would have determined that Mr. Butler was suffering from dehydration early enough to intervene with appropriate treatment, before such a patient began experiencing the severe complications that are known to develop from untreated hydration.

Had this physician provided adequate care to Mr. Huey Butler by ensuring through appropriate means, that Mr. Butler was adequately hydrated, then more likely than not and to a reasonable degree of medical and nursing, probability and certainty, Mr. Butler would not have suffered from dehydration and its related complications including acute kidney injury, hypovolemia, and shock liver. Furthermore, Mr. Butler's dehydration made him even more susceptible to medication side-effects including over-sedation. A reasonable physician practicing according to acceptable standards of care would have intervened with appropriate treatment and Mr. Huey Butler would not have suffered from dehydration while a patient in the care of Oceans Behavioral Hospital. This would have prevented Mr.

20

EXHIBIT "A"

Butler from suffering acute kidney injury, hypovolemia, shock liver, encephalopathy, unnecessary worsening of his condition, an extensive hospitalization, pain, mental anguish, loss of dignity, and ultimate death.

6. Dr. Javen Cavazos failed the standard of care which required that in July 2015 during the time of her care and treatment of Mr. Huey Butler, Dr. Javen Cavazos should have taken any necessary measures to ensure this patient did not suffer over-sedation or adverse side effects of medications.

Dr. Cavazos treated Mr. Butler with multiple medications for his symptoms including tranquilizers and antidepressants. In the medical records, Dr. Cavazos documented that Mr. Butler suffered from dementia. Dr. Cavazos treated Mr. Butler with various doses of antipsychotic medication during his entire stay at Oceans Behavioral Hospital.

Approximately mid-way through his stay at this facility, Mr. Butler had an "incident" during which he became confused and may have struck at a staff member of this facility. Following this incident, Mr. Butler's psychotropic medications were increased.

Almost immediately following this episode, Mr. Butler began showing signs of being overly sedated. This was noted frequently in the nursing notes of Oceans Behavioral Hospital.

During this same period of time, Dr. Cavazos was making progress notes almost daily that were inconsistent and contradictory. On March 16, 2015, Dr. Cavazos make a progress note which stated Mr. Butler "...has been compliant with medications."

However, on the very next day, March 17, 2015, Dr. Cavazos stated in another progress note that Mr. Butler "...has been refusing his medications for the past several days" and had also been refusing to have his vital signs taken.

On March 19, 2015, Dr. Cavazos stated in another progress noted that Mr. Butler "...continues to be...lethargic throughout the day".

In a final progress note dated March 20, 2015, Dr. Cavazos documented in the medical records that Mr. Butler "...continues to be sedated".

Despite documenting throughout the medical record that Mr. Butler had not been compliant,with taking his medications and treatments, Dr. Cavazos stated in the discharge summary of Mr. Butler's short stay that "While in the facility the patient was compliant with medications".

21

EXHIBIT "A"

On March 23, 2015, after being a patient in Oceans Behavioral Hospital for only 13 days, Mr. Butler was transferred from this facility by emergency medical services to Longview Regional Medical Center in Longview, Texas. Upon admission to the hospital, Mr. Butler was noted to be suffering from "mental status changes secondary to medication" and "over-sedation". The medical records of this hospital stay also documented that Mr. Butler was suffering from acute kidney injury, hypovolemia, and shock liver, all due to dehydration. Mr. Butler developed all of these conditions while he was a patient in the care of Oceans Behavioral Hospital for only 13 days.

On April 2, 2015, Mr. Butler was discharged from the hospital and admitted to a nursing home, Havencare Nursing and Rehab SNF in Longview, Texas.

Both the medical records of Mr. Butler from Longview Regional Medical Center and Havencare Nursing and Rehab SNF, documented that Mr. Butler had suffered encephalopathy or permanent brain damage as a result of his stay at Oceans Behavioral Hospital.

On July 10, 2015, Mr. Butler was readmitted to Havencare Nursing and Rehab SNF and was also admitted to hospice care on that same date due to the terminal nature of Mr. Butler's medical condition.

On August 3, 2015, Mr. Butler died in the nursing home as a result of the conditions from which he developed and suffered while a patient in the care of Oceans Behavioral Hospital only 4 months earlier.

As a direct cause, Dr. Javen Cavazos failed to comply with the standards of care regarding Mr. Huey Butler. The failure to comply with these standards caused, within a reasonable degree of medical and nursing, probability and certainty, Mr. Butler to suffer side effects from medications including over-sedation, which compounded his ability to fight illness, and compromised his ability to heal and deteriorated his physical function.

While Mr. Butler was a patient in Oceans Behavioral Hospital, Dr. Cavazos made progress notes which claimed she personally examined this patient on nearly a daily basis. Any reasonable physician practicing according to the acceptable standards of care would have determined that Mr. Butler was suffering from medication side effects including over-sedation early enough to intervene with appropriate treatment, before such a patient began experiencing the severe complications that are known to develop from untreated medication side effects including over-sedation.

22

EXHIBIT "A"

Had this healthcare facility provided adequate care to Mr. Huey Butler by ensuring through appropriate means, that Mr. Butler did not suffer medication side effects including over-sedation, then more likely than not and to a reasonable degree of medical and nursing, probability and certainty, Mr. Butler would not have suffered from dehydration, acute kidney injury, hypovolemia, shock liver, encephalopathy, unnecessary worsening of his condition, an extensive hospitalization, pain, mental anguish, loss of dignity, and ultimate death.

7.    Dr. Javen Cavazos failed the standard of care which required that in July 2015 during the time of her care and treatment of Mr. Huey Butler, Dr. Javen Cavazos should not have restrained this patient by physical means, or with chemical means using medications.

After leaving Oceans Behavioral Hospital, documentation with photographs revealed that Mr. Butler had been restrained physically while a patient at this facility. These photographs revealed the presence of ligature marks on multiple parts of Mr. Butler's body.

There is no information, documentation, or rationale in Mr. Butler's medical records from Oceans Behavioral Hospital that there was any need for physical restraints during this patient's short stay in this facility. There was no indication that the need for such restraints outweighed their risks. Such restraints are particularly dangerous in a patient such as Mr. Butler who was already at risk for dehydration. Restraints increased the likelihood even more that Mr. Butler would become dangerously dehydrated in that he would not be able to hydrate himself when he became thirsty.

The medical records of this case contain photographs documenting the physical injuries which Mr. Butler suffered as a result of the physical restraints placed upon him by the staff of Oceans Behavioral hospital. These photographs demonstrated clear evidence of some type of ligature marks over multiple parts of Mr. Butler's body. Even in the extreme case when physical restraints are justified in a patient, they should never result in ligature marks being left. These photographs document that the physical restraints placed upon Mr. Butler were improperly placed and not removed or adjusted in a timely manner when they were injuring Mr. Butler.

In addition to the physical restraints used upon Mr. Butler, the medical records of this patient made at Oceans Behavioral Hospital document that Mr. Butler was also "chemically restrained" in that the medications and combinations of medications administered to him caused this patient to be so sedated that it constituted another form of restraint that carried with it the same risks and potential complications as any physical restraint could. As was the case with the physical restraints, there was

23

EXHIBIT "A"

no information, documentation, or rationale in Mr. Butler's medical records from Oceans Behavioral Hospital that there was any need for chemically restraining this patient during his short stay in this facility. There was no indication that the need for such treatment outweighed its risk. Such method of restraining a patient is particularly dangerous in a patient such as Mr. Butler who was already at risk for dehydration. Restraining a patient such as Mr. Butler in this case was even more dangerous in regards to his dehydrated status in that he would not be able to hydrate himself when he became thirsty.

While Mr. Butler was a patient in Oceans Behavioral Hospital, Dr. Cavazos made progress notes which claimed she personally examined this patient on nearly a daily basis. Any reasonable physician practicing according to the acceptable standards of care would have determined that Mr. Butler should not have been restrained either physically or chemically.

Had this physician provided adequate care to Mr. Huey Butler by not using physical or chemical restraints, then more likely than not and to a reasonable degree of medical and nursing, probability and certainty, Mr. Butler would not have suffered from dehydration, acute kidney injury, hypovolemia, shock liver, encephalopathy, unnecessary worsening of his condition, an extensive hospitalization, pain, mental anguish, loss of dignity, and ultimate death.

8.    Dr. Javen Cavazos failed the standard of care which required that in July 2015 during the time of her care and treatment of Mr. Huey Butler, Dr. Javen Cavazos should not have prescribed antipsychotic medications to a patient such as Mr. Butler who was elderly and known to have dementia.

Mr. Butler had a history of major depressive disorder and dementia for which he had been receiving outpatient treatment. In order to better manage his symptoms he was admitted to inpatient care for his mental disturbances at Oceans Behavioral Hospital of Longview in Longview, Texas on March 10, 2015. His primary physician during this stay was Dr. Javen Cavazos. He remained a patient in this facility for less than two weeks until March 23, 2015.

Dr. Cavazos treated Mr. Butler with multiple medications for his symptoms including tranquilizers and antidepressants. In the medical records, Dr. Cavazos documented that Mr. Butler suffered from dementia. Dr. Cavazos treated Mr. Butler with various doses of antipsychotic medication during his entire stay at Oceans Behavioral Hospital.

While in Oceans Behavioral Hospital, Mr. Huey Butler was prescribed at least two different kinds of medications that are known as "antipsychotics". The United States Food and Drug Administration (FDA) has determined that medications in this

24

classification should not be used in patients who have dementia, due to an increased risk of sudden death in such patients. As a result, the FDA has issued a "Black Box Warning" to this effect. A Black Box Warning is the FDA's strongest warning regarding the risks and dangers of a medication.

In the United States, a boxed warning (or "black box warning", colloquially) is a type of warning that appears on the package insert for certain prescription drugs, so called because the U.S. Food and Drug Administration specifies that it is formatted with a 'box' or border around the text. The purpose of this border is to call the attention of prescribers and consumers to a particular medication in regards to its peculiar risks and hazards. The FDA can require a pharmaceutical company to place a boxed warning on the labeling of a prescription drug, or in literature describing it. It is the strongest warning that the FDA requires, and signifies that medical studies indicate that the drug carries a significant risk of serious or even life-threatening adverse effects.

The medical records of Mr. Huey Butler made at Oceans Behavioral Hospital clearly documented that this patient suffered from dementia during the time he was at this facility and was at high risk for illnesses and injuries caused by this condition. Any reasonable physician should have been aware of the risks and hazards associated with administering antipsychotic medication to an elderly resident with dementia. Nevertheless, Dr. Javen Cavazos still failed to exercise proper care by prescribing antipsychotic medication to a patient with advanced age and dementia, such as Mr. Huey Butler.

Had this physician provided adequate care to Mr. Huey Butler by ascertaining the seriousness of Mr. Butler's condition and not prescribing an antipsychotic medication to a patient such as Mr. Butler with advanced age and dementia, then more likely than not and to a reasonable degree of medical and nursing, probability and certainty, a reasonable physician practicing according to acceptable standards would have provided appropriate treatment and Mr. Huey Butler would not have suffered dehydration, acute kidney injury, hypovolemia, shock liver, encephalopathy, unnecessary worsening of his condition, an extensive hospitalization, pain, mental anguish, loss of dignity, and ultimate death.

## SUMMARY

I have been advised that *"Negligence"* means:

> *Negligence, when used with respect to the conduct of a medical facility or physician means failure to use ordinary care, that is, failing to do that which a medical facility or physician of ordinary prudence would have done under the same or similar circumstances or doing that which a medical facility or physician of ordinary prudence would not have done under the same or*

25

EXHIBIT "A"

*similar circumstances.*

I have been advised *"proximate cause"* means:

> *That cause which, in a natural and continuous sequence, produces an event, and without cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a health care facility or physician, using ordinary care, would have foreseen that the event or some similar event might reasonably result there from. There may be more than one proximate cause of an event.*

More likely than not, this failure on the part of Oceans Behavioral Hospital of Longview in Longview, Texas, and Dr. Javen Cavazos, to practice in an acceptable manner directly resulted in Mr. Huey Butler's dehydration, acute kidney injury, hypovolemia, shock liver, encephalopathy, unnecessary worsening of his condition, an extensive hospitalization, pain, mental anguish, loss of dignity, and ultimate death. As more specifically set forth above the actions and inactions of this facility and this physician, caused the conditions and complications described above.

In summary, Oceans Behavioral Hospital of Longview in Longview, Texas, and Dr. Javen Cavazos, did not meet the standard of care in their treatment of Mr. Huey Butler. It is my opinion, based on my medical education, experience, and training and based upon a reasonable degree of medical and nursing, probability and certainty, that these negligent acts and omissions as stated above proximately caused Mr. Butler's dehydration, acute kidney injury, hypovolemia, shock liver, encephalopathy, unnecessary worsening of his condition, an extensive hospitalization, pain, mental anguish, loss of dignity, and ultimate death. It is my opinion that Oceans Behavioral Hospital of Longview in Longview, Texas, and Dr. Javen Cavazos, knew that their failure to meet the standards of care would put Mr. Butler at extreme risk of harm and knew that this failure to meet these standards would likely cause complications or injuries to Mr. Butler. Nevertheless, Oceans Behavioral Hospital of Longview in Longview, Texas, and Dr. Javen Cavazos, still failed to follow the above standards. Had the standards of care been followed by Oceans Behavioral Hospital of Longview in Longview, Texas, and Dr. Javen Cavazos, more likely than not and based upon a reasonable degree of medical and nursing, probability and certainty, Mr. Huey Butler would not have suffered dehydration, acute kidney injury, hypovolemia, shock liver, encephalopathy, unnecessary worsening of his condition, an extensive hospitalization, pain, mental anguish, loss of dignity, and ultimate death.

I reserve the right to amend, or add to, my opinions upon review of additional records, testimony, or facts, as they become available, or upon further review of existing materials.

26

EXHIBIT "A"

Respectfully submitted,

Keith E. Miller, M.D.
620 Tenaha Street
Center, Texas   75935

27

EXHIBIT "A"

# CURRICULUM VITAE

## KEITH E. MILLER, M.D.

620 Tenaha Street

Center, Texas 75935

(936) 598-2716

EXHIBIT "A"

# KEITH E. MILLER, M.D.

## - EDUCATION -

Chief Resident, 7/87 to 6/88
University of Arkansas Medical Sciences Campus
Area Health Education Center, South Arkansas
El Dorado, Arkansas

Family Practice Residency, 7/86 to 6/88
University of Arkansas Medical Sciences Campus
Area Health Education Center, South Arkansas
El Dorado, Arkansas

Family Practice Internship, 7/85 to 6/86
University Hospital
Little Rock, Arkansas

Doctor of Medicine Degree, 8/81 to 5/85
University of Arkansas College of Medicine
Little Rock, Arkansas

Attended, 8/80 to 5/81
University of Arkansas at Little Rock, School of Law
Little Rock, Arkansas

Bachelor of Arts, 8/76 to 5/79
German and Chemistry
Baylor of University
Waco, Texas

Attended, 8/75 to 5/76
Biology and Chemistry
East Texas Baptist College
Marshall, Texas

Shelbyville High School, 8/71 to 5/75
Shelbyville, Texas

- 1 -

EXHIBIT "A"

# KEITH E. MILLER, M.D.

## -PRACTICE ACTIVITIES-

Full Time Family Medicine Practice, July 1988 to Present

Commissioner, 9/03 to 9/07
Texas State Board of Medical Examiners / Texas Medical Board
State Medical Licensing Board of Texas

Physician Consultant for Physician Peer Review, 8/90 to 9/03
Texas State Board of Medical Examiners
State Medical Licensing Board of Texas

Member, Texas Statewide Medical Advisory Committee, 8/95 to Present
Blue Cross/Blue Shield of Texas
Performs Physician Peer Review for All Blue Cross/Blue Shield Patients in Texas

President, 1990 to Present
Shelby County Medical Society

Advisory Committee Member and Clinical Faculty, 8/90 to Present
School of Licensed Vocational Nursing
Panola College
Center, Texas

Member, Board of Directors, and Medical Director, 8/90 to Present
Shelby County Child Advocacy Center
Center, Texas

2014 to Present
Family Medicine Service Privileges
Memorial Hospital San Augustine
San Augustine, Texas

2014 to Present
Family Medicine Service Privileges
Nacogdoches Medical Center
Nacogdoches, Texas

- 2 -

EXHIBIT "A"

183

# KEITH E. MILLER, M.D.

## -PRACTICE ACTIVITIES (CONTINUED)-

Former Physician Reviewer, Texas Medical Foundation, 8/90 to 8/03
Performs Physician Peer Review/Quality Assurance for Medicare and Champus

Former Clinical Faculty, Preceptor, 8/90 to 8/03
University of Texas Health Sciences Center
Family Practice Residency Program
Tyler, Texas

Former Director of Emergency Services, 8/90 to 8/03
Shelby Regional Medical Center
Center, Texas

Former Chief of Staff
Shelby Regional Medical Center
Center, Texas

July 1988 to 2013
Full Time Active Family Practice Privileges
Shelby Regional Medical Center
Center, Texas

September 2010 to Present
Medical Director
Legacy Hospice of Center
Center, Texas

March 2011 to Present
Assistant Medical Director
The Hospice of East Texas
Tyler, Texas

July 1988 to Present
Full Time Active Family Practice Privileges
Holiday Nursing Home
Center, Texas

- 3 -

EXHIBIT "A"

184

# KEITH E. MILLER, M.D.

## -PRACTICE ACTIVITIES (CONTINUED)-

July 1988 to Present
Full Time Active Family Practice Privileges
Pine Grove Nursing Home
Center, Texas

July 1988 to Present
Full Time Active Family Practice Privileges
Green Acres Nursing Home
Center, Texas

July 1988 to Present
Full Time Active Family Practice Privileges
Twin Lakes Nursing Home
San Augustine, Texas

July 1988 to Present
Full Time Active Family Practice Privileges
Colonial Pines Nursing Home
San Augustine, Texas

July 1988 to Present
Full Time Active Family Practice Privileges
Trinity Nursing and Rehabilitation Center
San Augustine, Texas

July 1988 to Present
Full Time Active Family Practice Privileges
El Camino House Nursing Home
San Augustine, Texas

December 2013 to Present
Full Time Active Family Practice Privileges
Lakeside Village Assisted Living
Center, Texas

- 4 -

## EXHIBIT "A"

# KEITH E. MILLER, M.D.

## -PRACTICE ACTIVITIES (CONTINUED)-

March 2012 to Present
Medical Director
Bethany Home Health Care Agency
Carthage, Texas

January 2014 to Present
Medical Director
Jennings Place
Assisted Living Facility and
Home and Community-Based Services Program for Adults with Mental Disabilities
Center, Texas

April 2016 to Present
Medical Director
Affinity Hospice
Center, Texas

October 2015 to Present
Emergency Department Physician
Tyler County Hospital
Woodville, Texas

## - BOARD CERTIFICATIONS -

American Board of Family Medicine, ID 53861

Certification Date July 8, 1988

Re-Certification Date July 14, 1995

Re-Certification Date July 12, 2002

Re-Certification Date July 15, 2010

- 5 -

EXHIBIT "A"

# KEITH E. MILLER, M.D.

## - PROFESSIONAL CERTIFICATIONS -

Hospice Medical Director Certified (HMDC)
Hospice Medical Director Certification Board
July 8, 2014 to Present

Certified Medical Review Officer
Medical Review Officer Certification Council
United States Department of Transportation
United States Department of Health and Human Services
Certified February 21, 2006
Re-certified March 24, 2012

Certified Medical Examiner
Federal Motor Carrier Safety Administration
United States Department of Transportation
United States Department of Health and Human Services
Certified February 11, 2014

Fellow (AAFP), 1990 to Present
American Academy of Family Physicians

American Heart Association
CPR Instructor
Advanced Cardiac Life Support Instructor
Pediatric Advanced Life Support Provider

## - PROFESSIONAL AFFILIATIONS -

American Medical Association

Southern Medical Association

American Academy of Family Physicians

Texas Medical Association

Shelby County Medical Society

- 6 -

EXHIBIT "A"

187

# KEITH E. MILLER, M.D.

---

## - VOLUNTEER ACTIVITIES -

Texas State Legislature
Physician of the Day, 1989 to Present

Coordinator, Free Physicals Programs, 1988 to Present
Department of Athletics
Center Independent School District, Center, Texas

Team Physician, 1988 to Present
Department of Athletics
Center Independent School District

Vice-President, Board of Trustees, 1990 to 1999
Center Independent School District, Center, Texas

Preceptor, 1990 to Present
Texas Statewide Medical Student Preceptorship Program

Member, Development Council
Baylor University

Former Member, Committee on Rural Health Concerns
Texas Medical Association

Former Member, Committee on Rural Health
Texas Academy of Family Physicians

## -LICENSURE-

State of Texas (H-2155), 8/87 to Present

Formerly Licensed in Arkansas and Louisiana

- 7 -

## EXHIBIT "A"

# KEITH E. MILLER, M.D.

## - AWARDS -

Texas Academy of Physician Assistants
Supervising Physician of the Year - 2004

American Medical Association
Physician's Recognition Award

American Academy of Family Physicians
Award for Clinical Instruction of Medical Students

Center Independent School District
Community Service Award for Contributions to
Student Academics and Athletics

Anderson County Educational Cooperative
Service Award for Organizing Programs for
Special Services Students

Texas State Legislature
Award of Appreciation for Serving as
Physician to Legislators While in Session

## - PUBLICATIONS -

"Use of Digoxin in the Family Practice Setting"
*Journal of the Arkansas Medical Society*
February 1988

EXHIBIT "A"

# KEITH E. MILLER, M.D.

## - ARTICLES -

"More Doctors in Texas After Malpractice Caps"
*New York Times*
October 5, 2007
Story of Texas Medical Board Responding to Increased Licensing
Demands During My Tenure as Chairman of the Licensing Committee

"Dangerous Doctors"
*Reader's Digest*
June 2004
Background Story of Texas Medical Board Prior to My
Appointment as a Commissioner

"Dangerous Doctors – Follow-Up"
*Reader's Digest*
March 2005
Follow-up Story of Texas Medical Board After My
Appointment as a Commissioner Including Motion Made by Me for the Largest Fine
Levied Against a Doctor by any State in History

"No Medicinal Jet Fuel"
*Texas Medicine*
August 2009
Story of My Filing of Complaint Against a Physician for Non-Therapeutic Prescribing

## - PERSONAL -

Married to Linda Gee Miller since 1975

Interests Are Health-Care Reform and Finance Issues, in America and Abroad

Speaks Fluent German and Passable Spanish

Instrument-Rated Private Aircraft Pilot

Umpire, High School Baseball

- 9 -

## EXHIBIT "A"

190